CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
HOWARD SHNEIDER (Bar No. 309492)
(E-Mail: howard_shneider@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-1456
Facsimile: (213) 894-0081

Attorneys for Defendant
STEFANI KASEY MARIE STEVENS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       v.<br><br>STEFANI KASEY MARIE STEVENS,<br><br>              Defendant. | Case No. ED CR 19-377-VAP<br><br>**NOTICE OF MOTION; MOTION TO SUPPRESS EVIDENCE**<br><br>Hearing Date:    October 4, 2022<br>Hearing Time:   9:00 a.m. |

TO:   Acting United States Attorney Stephanie S. Christensen and Assistant United States Attorney Robert Trisotto:

Please take notice that on October 4, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Virginia A. Phillips, United States District Judge, Stefani Stevens will bring on for hearing the following motion:

### MOTION

Stefani Stevens, through her counsel, moves the Court for an order suppressing all of the images that were searched before the issuance of a search warrant and described in the search warrant affidavit, specifically the images mentioned in the

search warrant affidavit from: the Kik account with the username ONENONLY7210; the Google account registered with the name SS and the email address oneandonly7210@gmail.com; the Kik account with the username LOVER7210; and the Kik account with the username KASEYJ187. Stevens further moves to suppress all fruits of the illegal searches, including all evidence obtained during the execution of a search warrant at Stevens's residence on November 8, 2019, including the statements made by Stevens that day and the data obtained from the takeover of her online accounts.

This motion is based upon the Fourth Amendment to the United States Constitution, the attached memorandum of points and authorities, declaration, exhibits, all files and records in this case, and any further evidence as may be adduced at the hearing on this motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

Dated:  September 6, 2022          By   /s/ Howard Shneider
                                   Howard Shneider
                                   Deputy Federal Public Defender
                                   Attorney for Stefani Kasey Marie Stevens

2

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................ 1

II. STATEMENT OF FACTS ............................................................................ 2

    A.    Kik's process for identifying suspected child pornography relied on the automated software program PhotoDNA. ............................................. 2

    B.    Agent Ruiz opened and viewed the initial image file forwarded by Kik, which led him to take further steps in the investigation. ........................... 4

           1.    Information provided by Kik. .......................................................... 4

           2.    Information missing from the Kik records. ..................................... 4

           3.    Agent Ruiz's further investigation based on the Kik records ........... 5

    C.    As part of Agent Ruiz's continued investigation, he requested and received records of a CyberTip from Google. ............................................. 5

           1.    Omissions from the affidavit. .......................................................... 6

           2.    Information contained in the CyberTip that is missing from the Kik records. ..................................................................................... 6

    D.    During the course of Agent Ruiz's investigation, he received additional Kik leads related to Stevens. .......................................................... 7

           1.    Information provided by Kik. .......................................................... 7

           2.    Information missing from Kik records. ........................................... 7

    E.    Agent Ruiz executed the search warrant, interrogated Stevens, got consent to take over her online accounts, and obtained further evidence. ........................................................................................... 8

III. ARGUMENT .............................................................................................. 8

    A.    The government bears the burden of demonstrating that the warrantless search of the Kik and Google images was constitutionally permitted. ........ 8

    B.    Under the private search doctrine, as analyzed in *Wilson*, suppression is required because Agent Ruiz impermissibly exceeded the scope of Kik's and Google's private searches. ............................................................. 9

           1.    *Wilson* controls and requires that the government meet its burden to show the government did not exceed the scope of any private search. ............................................................................. 9

           2.    The government cannot meet its burden to show that Agent Ruiz did not exceed the scope of Kik's search as to the image from ONENONLY7210 that began the entire investigation. ................... 11

           3.    The government bears the burden of showing that its evidence is not the fruit of the poisonous tree, which it cannot do here since

# **TABLE OF CONTENTS**

Page

all the other evidence in the case is the fruit of the illegal search of the ONENONLY7210 Kik image. ................................................. 12

4.   The government cannot meet its burden to show that Agent Ruiz did not exceed the scope of Google's search of the images described in the CyberTip.................................................................. 13

5.   The government cannot meet its burden to show that Agent Ruiz did not exceed the scope of  Kik's search of the remining images referenced in the warrant affidavit from the LOVER7210 and KASEYJ187 accounts......................................................................... 14

C.   Separate and apart from the private search exception, the government also illegally searched all of the images referenced in the warrant affidavit under a property-based theory. .................................................... 14

1.   Like physical mail, the Fourth Amendment protects a user's property interest in the contents of their online accounts................ 15

2.   The government violated Stevens's Fourth Amendment property rights. ......................................................................................... 16

3.   Agent Ruiz's property-based Fourth Amendment violation also requires suppression........................................................................ 18

D.   The Court should hold a *Franks* hearing regarding the Google images in the CyberTip because Agent Ruiz intentionally, or with reckless disregard for the truth, included misleading statements or omitted material facts from the affidavit.............................................................. 18

IV. CONCLUSION ..........................................................................................21

# TABLE OF AUTHORITIES

Page(s)

1

**Cases**

2

*Ajemian v. Yahoo!, Inc.*,
3
  478 Mass. 169 (2017) ....................................................................17

4

*Carpenter v. United States*,
5
  138 S. Ct. 2206 (2018) ...........................................................15, 17

6

*Ex Parte Jackson*,
7
  96 U.S. 727 (1877)..................................................................15, 16

8

*Franks v. Delaware*,
  438 U.S. 154 (1978).......................................................2, 18, 19, 21
9

*Jones v. United States*,
10
  357 U.S. 493 (1958)....................................................................9, 15

11

*Katz v. United States*,
12
  389 U.S. 347 (1967)....................................................................9, 15

13

*Kyllo v. United States*,
14
  533 U.S. 27 (2001) ....................................................................15, 17

15

*Minnesota v. Dickerson*,
16
  508 U.S. 366 (1993).........................................................................9

17

*Silverthorne Lumber Co. v. United States*,
18
  251 U.S. 385 (1920).......................................................................12

19

*Thompson v. Louisiana*,
20
  469 U.S. 17 (1984)...........................................................................9

21

*United States v. Ackerman*,
  831 F.3d 1292 (10th Cir. 2016) ....................................3, 16, 17, 18
22

*United States v. Alcaraz-Garcia*,
23
  79 F.3d 769 (9th Cir. 1996) .............................................................17

24

*United States v. Carbajal*,
25
  956 F.2d 924 (9th Cir. 1992) ............................................................9

26

*United States v. Cotterman*,
27
  709 F.3d 952 (9th Cir. 2013) (en banc) .........................................16

28

iii

# TABLE OF AUTHORITIES

Page(s)

*United States v. DeLeon*,
  979 F.2d 761 (9th Cir. 1992) .............................................................................. 19

*United States v. Jeffers*,
  342 U.S. 48 (1951) .............................................................................................. 9

*United States v. Jones*,
  565 U.S. 400 (2012) ...................................................................................... 15, 17

*United States v. Lull*,
  824 F.3d 109 (4th Cir. 2016) ............................................................................. 20

*United States v. Perkins*,
  850 F.3d 1109 (9th Cir. 2017) ...................................................................... 20, 21

*United States v. Scott*,
  705 F.3d 410 (9th Cir. 2012) ............................................................................. 11

*United States v. Shetler*,
  665 F.3d 1150 (9th Cir. 2011) ........................................................................... 13

*United States v. Stanert*,
  762 F.2d 775 (9th Cir. 1985) ....................................................................... 19, 21

*United States v. Thomas*,
  726 F.3d 1086 (9th Cir. 2013) ........................................................................... 15

*United States v. Twilley*,
  222 F.3d 1092 (9th Cir. 2000) ........................................................................... 13

*United States v. Wilson*,
  13 F.4th 961 (9th Cir. 2021) ....................................................................*passim*

*Wong Sun v. United States*,
  371 U.S. 471 (1963) ............................................................................... 9, 13, 18

**Other Authorities**

Roderick O'Dorisio, *"You've Got Mail!" Decoding the Bits and Bytes of Fourth Amendment Computer Searches After Ackerman* , 94 Denv. L. Rev. 651, 679 (2017 ........................................................................................ 17

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. INTRODUCTION

3      The investigation against Stephanie Stevens began in April 2019 when Kik, a

4 mobile instant messaging application, identified the user ONENONLY7210 as

5 uploading one image of suspected child pornography. Kik identified the image through

6 the use of automated hashing software called PhotoDNA. PhotoDNA's identification of

7 that one image set off a chain of events that led to the issuance and execution of a

8 search warrant at Stevens's residence on November 8, 2019.

9      When Kik forwarded records about the image to law enforcement, the records

10 eventually made their way to the desk of Special Agent Jonathan Ruiz. Agent Ruiz then

11 opened the image file, viewed it, and used the information in the image to investigate

12 Stevens. Through further investigation, Agent Ruiz gathered information about Internet

13 Protocol (IP) addresses tied to Stevens, requested and received a CyberTip from the

14 National Center for Missing and Exploited Children with additional images from

15 Google, and requested and received further tips from Kik with additional images. These

16 records were all used to support the warrant application. But Agent Ruiz would not

17 have received any of these additional records but for his viewing of that first image

18 flagged by Kik.

19      The problem with this chain of events is that the government cannot meet its

20 burden under *United States v. Wilson* to establish that Agent Ruiz's viewing of that first

21 image file did not exceed the scope of Kik's viewing of that same file. 13 F.4th 961

22 (9th Cir. 2021). As a result, Agent Ruiz's viewing of that first image was an illegal

23 warrantless search. And everything that came after was the fruit of that illegal search

24 and must be suppressed.

25      The illegal search of the first image under the *Wilson* private search rubric should

26 end the inquiry. But suppression is also required because Agent Ruiz's viewing of all

27 the images described in the search warrant affidavit constituted a search under a

28 property-based theory of a Fourth Amendment search. Agent Ruiz's viewing of the

image files was the equivalent of a common-law trespass. Through that lens, suppression is also required.

To the extent the Court focuses on the images from Google described in the CyberTip, Agent Ruiz omitted material facts regarding the source of those images. He neglected to explain in the warrant affidavit that the images were uploaded from IP addresses that were not connected to Stevens's residence. Because of the material omission regarding the Google images, under *Franks v. Delaware*, 438 U.S. 154 (1978), the Court should excise the information about the Google images from the warrant affidavit.

Regardless of the legal theory employed, the same result yields: Agent Ruiz illegally searched the images described in the warrant affidavit and suppression of those images is required. Suppression is also required as to all the evidence obtained during, and as a result of, the execution of the search warrant, since that evidence was all fruit of the poisonous tree.

## II. STATEMENT OF FACTS

On November 8, 2019, Agent Ruiz filed an affidavit in support of a warrant to search Stevens's residence at 34184 County Line Road, Space #90, Yucaipa, California 92399, and Stevens's person. Ex. A, Warrant Aff., ¶ 1. The affidavit explains that the investigation into Stevens began when Agent Ruiz received information regarding one image of suspected child pornography from Kik.

**A.    Kik's process for identifying suspected child pornography relied on the automated software program PhotoDNA.**

Before going further, it is useful to back up to explain what exactly happened for the one image and associated records to make their way to Agent Ruiz. Kik is a mobile application on which individuals can set up an account and use the app to send messages to other users. Ex. A ¶¶ 19-21. Kik identifies child pornography by using digital hash value matches to previously-identified child pornography images. *Id.* ¶ 24. "A hash value is (usually) a short string of characters generated from a much larger

string of data (say, an electronic image) using an algorithm[.]" *United States v. Ackerman*, 831 F.3d 1292, 1294 (10th Cir. 2016). Kik utilized PhotoDNA software to automatically scan user-uploaded files to flag images of suspected child pornography. Ex. A ¶ 25. As described in the affidavit, "PhotoDNA creates a unique digital signature (known as a 'hash') of an image which is then compared against signatures (hashes) of other photos to find copies of the same image." *Id.* ¶ 24. Kik had a database of previously-identified child pornography images, and all of those images had an assigned hash value. PhotoDNA would then scan newly-uploaded photos to see if their hash values matched the hash value of any of the images in the database.

The affidavit explains, "According to information provided by a Kik Law Enforcement Response Team Lead, all suspected child pornography images and videos reported via PhotoDNA is reviewed by a member of the Kik Law Enforcement Response Team before a report is forwarded to law enforcement authorities." Ex. A ¶ 25. It appears this statement in the affidavit is based on information contained in a document titled Kik Interactive, Inc. Child Sexual Abuse and Illegal Material Report and Glossary (hereinafter "Kik Report"), which was provided in discovery and is attached as Exhibit B. The report includes a *nota bene* that states, "NB: From the time of implementation of PhotoDNA technology, a Kik employee has reviewed all images identified by PhotoDNA technology before reporting the image to law enforcement." Ex. B at p. 3.

What is missing from the Kik records provided in discovery, however, is any documentation that verifies or even indicates that a Kik employee reviewed any of the Kik image files mentioned in the affidavit. Instead, the government appears to rely solely on the Kik Report to conclude that someone at Kik reviewed the images at issue here.

At the time Kik identified the image that began this investigation, Kik was located and operating in Canada. *Id.* ¶ 24. Under Canadian law, Kik was required to report any suspected child pornography images discovered on the platform to Canadian

3

law enforcement. *Id.* The Canadian authorities would then review the IP addresses in the Kik report and forward reports with U.S. IP addresses to the HSI Office Attaché in Ottawa. *Id.* ¶ 26. That office would then send the records to the HSI Cyber Crimes Center (C3), which would then forward the records to the applicable local HSI field office. *Id.*

**B.    Agent Ruiz opened and viewed the initial image file forwarded by Kik, which led him to take further steps in the investigation.**

**1.    Information provided by Kik.**

The affidavit explains that in August 2019 Agent Ruiz received information from HSI C3 that in April 2019 Kik identified the user ONENONLY7210 as uploading one image of suspected child pornography. Ex. A ¶ 27. Kik found this out because PhotoDNA flagged the image. *Id.* The information provided by Kik included a Subscriber Data Report with the account's registration and login information and a copy of the image identified by PhotoDNA. *Id.* In September 2019, Agent Ruiz opened the image file and reviewed the image identified by PhotoDNA. *Id.* ¶ 28. The affidavit describes the image as depicting a nude male adult vaginally penetrating an infant female's vagina. *Id.*[1]

**2.    Information missing from the Kik records.**

While Kik provided a copy of the image and information about when and where the image was uploaded, Kik did not provide any records that indicate whether a human being at Kik reviewed the image uploaded by user ONENONLY7210. As described above, the Kik Report states that in all cases involving PhotoDNA "a Kik employee has reviewed all images identified by PhotoDNA technology before reporting the image to

---

[1] Defense counsel has not yet reviewed the images described in the affidavit, so cannot confirm if the descriptions are accurate. For purposes of argument here, the motion assumes the descriptions of the images are accurate. But counsel reserves the right to supplement this motion later after reviewing the images described in the affidavit.

4

law enforcement." Ex. B at p. 3. But the lone statement in the Kik Report is the only evidence here that anyone at Kik reviewed the image. There are no records from Kik that show who, if anyone, actually viewed the image. There are also no records from Kik that show what, if any, determination anyone at Kik made as to whether the image was in fact child pornography.

### 3.   Agent Ruiz's further investigation based on the Kik records.

Viewing the image from the ONENONLY7210 Kik account led Agent Ruiz to take further investigative steps. He reviewed the information in the Subscriber Data Report, which included the IP address from which the image was uploaded as well as the IP addresses used by the account on different dates and times. Ex. A ¶¶ 29-31. Agent Ruiz then further investigated three IP addresses associated with the Kik account. *Id.* ¶¶ 32-35. Based on his investigation, he learned that one of the IP addresses was associated with 34184 County Line Road, Space #90, Yucaipa, California 92399—Stevens's residence. The link between the IP address and Stevens's residence is what led Agent Ruiz to seek a search warrant for that residence. Agent Ruiz also looked Stevens up in search databases and found some of her social media accounts. *Id.* ¶¶ 36-40.

### C.   As part of Agent Ruiz's continued investigation, he requested and received records of a CyberTip from Google.

On October 30, 2019, Agent Ruiz requested that the National Center for Missing and Exploited Children (NCMEC) search its databases for any reports related to the information Agent Ruiz had at that point regarding Stevens. Ex. A ¶ 41. The next day, NCMEC responded that CyberTip 49677716 may be related to Stevens. *Id.* ¶ 42. Agent Ruiz then got a copy of the CyberTip from Detective Brian Arias, an LAPD ICAC Taskforce member. *Id.* ¶¶ 42-43. According to the CyberTip, Google reported to NCMEC that it found images of suspected child pornography stored in the Google Photos Infrastructure in an account registered with the name SS and email addresses associated with Stevens. *Id.* ¶ 43. Agent Ruiz reviewed seven images in the CyberTip

5

and described them in the affidavit as depicting a prepubescent female in different poses. *Id.* ¶ 44.

### 1. Omissions from the affidavit.

What Agent Ruiz omits from the affidavit is that the CyberTip included IP addresses associated with the Google account, and none of those IP addresses were the same IP address associated with the Kik account that resolved to Stevens's residence. *See* Ex. C, CyberTip, at USA_0000615, USA_0000619-20 (listing IP addresses, none of which are 172.250.146.2, the IP address associated with Stevens's residence). In other words, none of the IP addresses associated with the Google account were related to the residence Agent Ruiz sought to search via the requested warrant.

Agent Ruiz also omitted the fact that his descriptions of the images conflict with Google's descriptions. The affidavit describes the subject of the photos as a "prepubescent female, appearing to be under the age of 12 years old." Ex. A ¶ 44(a). But in the CyberTip, Google classified each photo as falling into category B and depicting a pubescent female. *See* Ex. C at USA_0000619 (explaining Google's categories for prepubescent and pubescent); *id.* at USA_0000621-22 (describing all but two of the images as showing a pubescent female).

### 2. Information contained in the CyberTip that is missing from the Kik records.

Unlike the Kik records described above that contained no information about whether the individual image was reviewed by a Kik employee, the CyberTip includes information indicating that a Google employee reviewed each image before forwarding it to NCMEC. For each image, there is a line that says, "Did Reporting ESP view entire contents of uploaded file?" And the answer for each image is "Yes." Ex. C at USA_0000616-18. The CyberTip explains, "With respect to the portion of this CyberTip containing the heading: 'Was File Reviewed by Company?', when Google responds 'Yes' it means the contents of the file reported were viewed by a person concurrently to or immediately preceding the sending of the CyberTip." *Id.* at

6

USA_0000614. Thus, for the CyberTip there is at least some evidence that a human reviewed each image before sending the image to law enforcement. Nonetheless, there is still key information missing, such as the identity of the Google employee, the date the image was reviewed, how much time the employee spent reviewing each image, and the employee's training in detecting child pornography.

**D.     During the course of Agent Ruiz's investigation, he received additional Kik leads related to Stevens.**

**1.     Information provided by Kik.**

On November 6, 2019, Agent Ruiz received additional records from HSI C3 that had been forwarded by Kik. Ex. A ¶ 45. Kik reported that PhotoDNA identified the user account LOVER7210 as uploading two suspect child pornography images, one of which was uploaded on the IP address associated with Stevens's residence. *Id.* Agent Ruiz opened the image and viewed it. *Id.* ¶ 46. The affidavit describes the image as depicting a male adult's penis resting on the lips of an infant. *Id.*

On November 7, 2019, HSI C3 forwarded Agent Ruiz another Kik lead. *Id.* ¶ 47. Through PhotoDNA, Kik identified a suspected child pornography image uploaded by user KASEYJ187 from the same IP address associated with Stevens's residence. *Id.* ¶¶ 47-48. Agent Ruiz opened the file and viewed the image, which the affidavit describes as an infant with her buttocks spread by an adult person's hand. *Id.* ¶ 48.

**2.     Information missing from Kik records.**

As with the first Kik image that sparked the entire investigation, there are no records as to the images uploaded by LOVER7210 or KASEYJ187 that indicate whether a Kik employee reviewed the images. We are again left only with the statement in the Kik Report that someone from Kik always reviewed images flagged by PhotoDNA. Ex. B at p 3. But there are no records to substantiate that statement as to these specific images.

//

//

7

1  **E.     Agent Ruiz executed the search warrant, interrogated Stevens, got**
2  **       consent to take over her online accounts, and obtained further**
3  **       evidence.**

4  Based on the information in the affidavit, Magistrate Judge Sheri Pym issued a
5  search warrant on November 8, 2019, authorizing the search of Stevens's residence and
6  her person. Ex. A at USA_0000107. That same day, Agent Ruiz and other law
7  enforcement personnel executed the search warrant at Stevens's residence. Agent Ruiz
8  interrogated Stevens at her residence. During the interrogation, Stevens admitted to
9  viewing child pornography online, including some of the images associated with the
10  Kik and Google accounts. Compl., Dkt. 1, ¶¶ 12-18. That day Stevens signed a form
11  titled Consent to Assume Online Identity that gave Agent Ruiz permission to take over
12  her online accounts. A search of those online accounts revealed further images and
13  videos of suspect child pornography. Based on what he learned from the investigation,
14  Agent Ruiz later applied for and obtained a search warrant for Stevens's Google
15  accounts. The evidence from those accounts is described in the government's motion in
16  limine to allow the introduction of Google records. Dkt. 40.

17  Based on the evidence from the various online accounts and Agent Ruiz's
18  additional investigation, the government ultimately filed an indictment charging
19  Stevens with obtaining custody of a minor with intent to produce child pornography
20  and charges of production, distribution, and possession of child pornography. Dkt. 11,
21  Indictment.

22  **III. ARGUMENT**

23  **A.     The government bears the burden of demonstrating that the**
24  **       warrantless search of the Kik and Google images was constitutionally**
25  **       permitted.**

26  The Fourth Amendment provides the "right of the people to be secure in their
27  persons, houses, papers, and effects, against unreasonable searches and seizures, shall
28  not be violated." U.S. Const. amend. IV. Warrantless searches and seizures are

8

considered unreasonable unless they fall within a "few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967); *Thompson v. Louisiana*, 469 U.S. 17, 19-20 (1984); *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). There are only a handful of recognized exceptions to the warrant requirement, and they are "jealously and carefully drawn." *Jones v. United States*, 357 U.S. 493, 499 (1958).

When a warrantless search takes place, the government bears the burden of demonstrating that an exception to the warrant requirement applies. *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992) ("The burden  is on the Government, moreover, to show the reasonableness of a warrantless search. This includes demonstrating that the search comes within one of the narrow exceptions to the warrant requirement."); *see also United States v. Jeffers*, 342 U.S. 48, 51 (1951) ("the burden is on those seeking the exemption [from the warrant requirement] to show the need for it"). If the government cannot satisfy its burden of proving that the warrantless search was constitutional, all evidence recovered as the result of the search must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 485-86 (1963).

**B.**     **Under the private search doctrine, as analyzed in *Wilson*, suppression is required because Agent Ruiz impermissibly exceeded the scope of Kik's and Google's private searches.**

**1.**     ***Wilson* controls and requires that the government meet its burden to show the government did not exceed the scope of any private search.**

One exception to the warrant requirement that the government will argue applies here is the private search doctrine. "The private search doctrine concerns circumstances in which a private party's intrusions would have constituted a search had the government conducted it and the material discovered by the private party then comes into the government's possession." *United States v. Wilson*, 13 F.4th 961, 967 (9th Cir.

9

2021). Under this exception, the government may warrantlessly view records produced by private parties so long as "the government search does not exceed the scope of the private one." *Id.* at 968. The key question in a private search inquiry is whether the second search conducted by law enforcement exceeded the scope of the first, private search. *Id.* at 971-72.

The private search exception here turns on the Ninth Circuit's recent interpretation of the doctrine in *United States v. Wilson*, 13 F.4th 961, 967 (9th Cir. 2021). In *Wilson*, Google reported suspected child pornography to NCMEC and sent "four images of apparent child pornography" uploaded as email attachments to a Gmail account. *Id.* at 964. No Google employee "had opened or viewed Wilson's email attachments," but instead made the report based on an automatic hashing process similar to the one used by Kik in our case. *Id.*

Under Google's system, Google has employees who view suspected child pornography images and, if confirmed to be such an image, assigns the image a hash value and places that hash value in a "repository of hashes." *Id.* at 964-65. If the hash value of an image uploaded to a Google account matches a hash value in the repository, Google makes a report to NCMEC. *Id.* at 965. In *Wilson*, there was a hash value match to four photos uploaded to one of Wilson's Gmail accounts and Google forwarded the information to NCMEC. *Id.* No Google employee viewed the images before they were submitted to NCMEC along with the report. *Id.* NCMEC did not view them either, but once they were transmitted to law enforcement in San Diego an agent viewed the images without a warrant. *Id.*

After viewing the images, the agent concluded they were child pornography and obtained a search warrant for Wilson's email accounts. *Id.* at 966. That warrant turned up more child pornography and led to another warrant to search Wilson's residence. *Id.* The search of the residence revealed "thousands of images of child pornography." *Id.* The district court denied Wilson's motion to suppress, but the Ninth Circuit reversed.

10

The Ninth Circuit in *Wilson* focused its attention on whether the private search exception allowed the agent to view the images contained in the CyberTip without a warrant. *Id.* The court held that "the government's actions," in having the agent view the images provided by Google to NCMEC, "exceed[ed] the limits of the private search exception." *Id.* at 971. The court explained (1) that the agent's viewing of the images "allowed the government to learn new, critical information that it used first to obtain a warrant and then to prosecute Wilson"; and (2) "the government search . . . expanded the scope of" Google's search because "no Google employee—or other person—had" actually viewed the images. *Id.* at 972. Based on these conclusions, the Ninth Circuit found that the agent "violated Wilson's Fourth Amendment right to be free from unreasonable searches when he examined Wilson's email attachments without a warrant." *Id.* at 980.

### 2. The government cannot meet its burden to show that Agent Ruiz did not exceed the scope of Kik's search as to the image from ONENONLY7210 that began the entire investigation.

As always in the warrantless search context, the government bears the burden to prove the private search exception applies here. *Id.* at 971; *see also United States v. Scott*, 705 F.3d 410, 416-17 (9th Cir. 2012). The government cannot meet its burden to show that Agent Ruiz did not expand the scope of Kik's search when he viewed the image from the ONENONLY7210 account that started the investigation. There are no documents from Kik indicating that a Kik employee viewed the image from ONENONLY7210. Ex. A ¶¶ 27-28. Instead, the government relies on a statement from the Kik Report for the proposition that a Kik employee must have viewed the image. That statement reads, "NB: From the time of implementation of PhotoDNA technology, a Kik employee has reviewed all images identified by PhotoDNA technology before reporting the image to law enforcement." Ex. B at p. 3. The statement in the Kik Report is insufficient to meet the government's burden.

//

11

As a useful point of comparison, the CyberTip from Google in this case included information indicating whether a Google employee viewed the images in question. For each image in the CyberTip, there is a line that says, "Did Reporting ESP view entire contents of uploaded file?" And the answer for each image is "Yes." Ex. C at USA_0000616-18. The CyberTip explains, "With respect to the portion of this CyberTip containing the heading: 'Was File Reviewed by Company?', when Google responds 'Yes' it means the contents of the file reported were viewed by a person concurrently to or immediately preceding the sending of the CyberTip." *Id.* at USA_0000614. As discussed further below, the CyberTip is still missing critical information. But at least the CyberTip includes basic information indicating a human being viewed the images. There are no such records from Kik.

With only a sweeping statement in the Kik Report and nothing more, the government falls well short of meeting its burden. Agent Ruiz opened the image file and viewed the image from ONENONLY7210. This was a search under *Wilson*, and that search expanded the scope of Kik's previous search. All we know for certain is that Kik ran the automated PhotoDNA program, which concluded there was a hash match between the ONENONLY7210 photo and a child pornography image in Kik's database. Since, under the available evidence, Agent Ruiz was the first person to actually open and view the image, his search expanded the hash matching performed by Kik and constituted an illegal search. Because of the illegal search, the Court should suppress the image Kik forwarded to law enforcement from the ONENONLY7210 account.

**3.    The government bears the burden of showing that its evidence is not the fruit of the poisonous tree, which it cannot do here since all the other evidence in the case is the fruit of the illegal search of the ONENONLY7210 Kik image.**

The exclusionary rule protects the Fourth Amendment by barring the government from using unconstitutionally-seized evidence. *Silverthorne Lumber Co. v. United*

*States*, 251 U.S. 385, 392 (1920) ("The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all."). To make that protection meaningful, the "rule applies both to direct products of an illegal search . . . and to indirect products of the illegal search . . . if they bear a sufficiently close relationship to the underlying illegality." *United States v. Shetler*, 665 F.3d 1150, 1157 (9th Cir. 2011). A "sufficiently close relationship" exists if the evidence "has been come at by exploitation of the primary illegality," rather than "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 at 488. Once a Fourth Amendment violation is shown, "[t]he government has the burden to show that the evidence is not the fruit of the poisonous tree." *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000).

Here, as described above, Agent Ruiz conducted an illegal search of the image uploaded to the Kik account ONENONLY7210. Because everything else in the investigation flowed from that illegal search, that should be the end of the inquiry and the Court should suppress all evidence against Stevens. Suppression applies to the other images described in the warrant affidavit since they would not have been found if not for Agent Ruiz opening an investigation based on the image from ONENONLY7210. And suppression also applies to all of the evidence found and searched when Agent Ruiz executed the search warrant at Stevens's residence. Agent Ruiz never would have had a search warrant in the first place but for the illegal search of the ONENONLY7210 image. Accordingly, everything seized and searched from Stevens's residence must also be suppressed.

**4.  The government cannot meet its burden to show that Agent Ruiz did not exceed the scope of Google's search of the images described in the CyberTip.**

If the Court concludes that the search of the first Kik image was illegal, then that should end the analysis because everything that came after was the fruit of the

poisonous tree. But in the event the Court disagrees, Stevens briefly analyzes the remaining photos referenced in the warrant affidavit.

Regarding the Google images, the CyberTip indicates a Google employee reviewed each image. But the information in the CyberTip is still insufficient to meet the government's burden to show that Agent Ruiz did not exceed the scope of Google's search. The CyberTip fails to provide information about who at Google viewed each image, when they viewed the image, how long they spent reviewing the image, how they determined whether each image was child pornography, and any other information aside from the bare fact that a Google employee viewed the image. In the absence of this additional information, the government cannot meet its burden to show that Agent Ruiz's search of each image did not exceed the scope of Google's private search. As a result, Agent Ruiz's search of the Google images was also illegal, and those images should be suppressed on that separate basis.

**5.     The government cannot meet its burden to show that Agent Ruiz did not exceed the scope of  Kik's search of the remining images referenced in the warrant affidavit from the LOVER7210 and KASEYJ187 accounts.**

For the same reasons that the government cannot meet its burden to justify the warrantless search of the first Kik image, it also cannot justify its warrantless search of the remaining Kik images referenced in paragraphs 45-48 of the warrant affidavit. Once again, there is no documentation showing that a Kik employee actually reviewed those specific images. Accordingly, the government falls short of its burden and the Court should suppress those illegally-searched images on that independent basis.

**C.     Separate and apart from the private search exception, the government also illegally searched all of the images referenced in the warrant affidavit under a property-based theory.**

Distinct from the private search analysis is an alternate theory for suppression grounded in Stevens's property rights in the images searched. The images were

14

Stevens's property, the same as any chattel in her possession. When Agent Ruiz opened and viewed each image file, he trespassed on Stevens's property. This resulted in an unconstitutional search of all the images referenced in the affidavit, regardless of whether they were first searched by a Kik or Google employee.

### 1.    Like physical mail, the Fourth Amendment protects a user's property interest in the contents of their online accounts.

The private search framework discussed in *Wilson* turns on the *Katz* test, which asks whether "the individual manifested a subjective expectation of privacy in the object of the challenged search, and society is willing to recognize that expectation as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (cleaned up). But, in *United States v. Jones*, 565 U.S. 400 (2012), the Supreme Court "changed the jurisprudential landscape by holding that this was not the exclusive rubric." *United States v. Thomas*, 726 F.3d 1086, 1092 (9th Cir. 2013). Instead, in *Jones* the Supreme Court focused on a "property-based" analysis that stems from the Fourth Amendment's roots in "common-law trespass." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). The focus is whether a state actor has physically intruded into private property "for the purpose of obtaining information." *Jones*, 565 U.S. at 404. In other words, if "the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." *Thomas*, 726 F.3d at 1092 (cleaned up).

Beginning with traditional property principles, in *Ex Parte Jackson*, the Supreme Court held, "[l]etters and sealed packages . . . in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles." 96 U.S. 727, 733 (1877). The Court further explained, "[t]he constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar

oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household." *Id.*

This is equally true of data contained in online accounts. As the Ninth Circuit explained regarding the contents of digital devices, the data stored in a digital device "implicates the Fourth Amendment's specific guarantee of the people's right to be secure in their papers. The express listing of papers reflects the Founders' deep concern with safeguarding the privacy of thoughts and ideas—what we might call freedom of conscience—from invasion by the government." *United States v. Cotterman*, 709 F.3d 952, 964 (9th Cir. 2013) (en banc) (cleaned up). As then-Judge Gorsuch discussed in the context of emails, information stored in online accounts can be the equivalent of "a paper or effect for Fourth Amendment purposes, a form of communication capable of storing all sorts of private and personal details, from correspondence to images, video or audio files, and so much more." *United States v. Ackerman*, 831 F.3d 1292, 1304 (10th Cir. 2016) (cleaned up).

Thus, when a government agent opens and views the contents of an online account like Kik or Google without a warrant, "that seems pretty clearly to qualify as exactly the type of trespass to chattels that the framers sought to prevent when they adopted the Fourth Amendment." *Id.* at 1307. And while "the framers were concerned with the protection of physical rather than virtual correspondence[,] a more obvious analogy from principle to new technology is hard to imagine and, indeed, many courts have already applied the common law's ancient trespass to chattels doctrine to electronic, not just written, communications." *Id.* at 1308 (listing cases).

## 2.    The government violated Stevens's Fourth Amendment property rights.

The contents of the Kik and Google accounts here were Stevens's property—her papers or effects. Just like the package in *Ex Parte Jackson*, 96 U.S. at 733, no one possessed an ownership interest superior to Stevens's. To the extent Kik or Google had any possessory interest in Stevens's property, they were acting as a bailee holding

Stevens's bailment (her Kik and Google data). Discussing email, the Supreme Court explained "few doubt that e-mail should be treated much like the traditional mail it has largely supplanted—as a bailment in which the owner retains a vital and protected legal interest." *Carpenter*, 138 S. Ct. at 2269 (2018) (Gorsuch, J. dissenting); *see United States v. Alcaraz-Garcia*, 79 F.3d 769, 774 n.11 (9th Cir. 1996) ("A bailment is the deposit of personal property with another"). And "a bailment does not alter the bailor's title interest in the bailed property; moreover, a bailor may assert title against any third person to whom the property has been transferred." *Id.* at 775 (cleaned up); *see also Ajemian v. Yahoo!, Inc.*, 478 Mass. 169, 170 (2017) (an email account is a "form of property often referred to as a 'digital asset'"). Thus, "it did not matter that [the data in Stevens's online accounts] were bailed to a third party. The sender enjoyed the same Fourth Amendment protection as [s]he did when papers are subjected to search in one's own household." *Carpenter*, 138 S. Ct. at 2269 (cleaned up; alterations added).

The Kik and Google files remained Stevens's property under the Fourth Amendment and Agent Ruiz violated that protected legal interest. It was as if he opened private documents in Stevens's home for the purpose of obtaining incriminating information. *See Kyllo v. United States*, 533 U.S. at 34 ("obtaining by [] technology any information [from] the interior of the home that could not otherwise have been obtained without physical 'intrusion into a constitutionally protected area,' constitutes a search[.]") (citation omitted). This was the modern equivalent of a common law trespass. *See id.*; *Jones*, 565 U.S. at 419 n.2 ("At common law, a suit for trespass to chattels could be maintained if there was a violation of the dignitary interest in the inviolability of chattels") (Alito, J., concurring) (cleaned up).

It was "exactly the type of trespass to chattels that the framers sought to prevent when they adopted the Fourth Amendment." *Ackerman*, 831 F.3d at 1307; *see* Roderick O'Dorisio, *"You've Got Mail!" Decoding the Bits and Bytes of Fourth Amendment Computer Searches After Ackerman*, 94 Denv. L. Rev. 651, 679 (2017) ("opening a previously-closed file triggers a unique Fourth Amendment search in the absence of a

warrant."). And because "the Fourth Amendment is no less protective of persons and property against governmental invasions than the common law was at the time of the founding," this trespass violated the Fourth Amendment. *Ackerman*, 831 F.3d at 1307; *You've Got Mail*, 94 Denv. L. Rev. at 677. Accordingly, private search or not, the search was unconstitutional under a property rights theory.

>    **3.    Agent Ruiz's property-based Fourth Amendment violation also requires suppression.**

Because of the illegal search under a property rights theory, the Court should suppress all of the images referenced in the warrant affidavit on that separate basis. Agent Ruiz would not have been able to obtain a search warrant without the images referenced in the affidavit. And without a search warrant he would not have gathered the evidence at Stevens's residence. Accordingly, all evidence recovered from the residence should be suppressed as "fruit of the poisonous tree." *Wong Sun*, 371 U.S. at 485-86.

**D.    The Court should hold a *Franks* hearing regarding the Google images in the CyberTip because Agent Ruiz intentionally, or with reckless disregard for the truth, included misleading statements or omitted material facts from the affidavit.**

The Court should grant this motion based on either the private search doctrine or the property-based theory described above. In either scenario the admissibility of the Google images in the CyberTip should not be the deciding factor. But, to the extent the images in the Google account affect the Court's analysis, there is a separate basis to excise references to the Google images from the warrant affidavit.

A defendant may challenge the validity of a search warrant affidavit if he makes a substantial preliminary showing that (1) the affiant "knowingly and intentionally, or with reckless disregard for the truth" inserted a false or misleading statement in the warrant affidavit, and (2) the affidavit cannot support a finding of probable cause without the allegedly false or misleading information. *Franks v. Delaware*, 438 U.S.

18

154, 155-56 (1978). The *Franks* rule applies not only to warrants that contain false or misleading statements, but also to warrants that contain deliberate or reckless omissions of material facts. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985). "Clear proof of deliberate or reckless omission is not required" to show entitlement to an evidentiary hearing. *Id.* "At this stage, all that is required is that the defendant make a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *Id.* If, after an evidentiary hearing, the Court finds that the magistrate judge was misled by false or omitted information, then suppression of the evidence is required. *United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992).

The affidavit in this case omitted key information and also included misleading statements. Agent Ruiz omitted the fact that the CyberTip included IP addresses associated with the Google account. Further, none of those IP addresses were linked to Stevens's residence. *See* Ex. C at USA_0000615, USA_0000619-20 (listing IP addresses, none of which are the same as 172.250.146.2, the IP address associated with Stevens's residence). In other words, none of the IP addresses associated with the Google account were related to the residence the warrant affidavit sought permission to search. Because the Google images were not connected to Stevens's residence, they did not support a probable cause determination that there would be contraband found at the residence.

Agent Ruiz also omitted the fact that his descriptions of the images conflict with Google's descriptions. The affidavit describes the subject of the photos as a "prepubescent female, appearing to be under the age of 12 years old." Ex. A ¶ 44(a). But in the CyberTip, Google classified each photo as falling into category B and depicting a pubescent female. *See* Ex. C at USA_0000619 (explaining Google's categories for prepubescent and pubescent); *id.* at USA_0000621-22 (describing all but two of the individual images as showing a pubescent female). Determinations regarding whether images are in fact child pornography are fact specific, and some cases on the

borderline require more than just a lay person's opinion about the nature of an image. Because the images here were of a pubescent rather than prepubescent minor, Agent Ruiz should have been up front about that distinction so that the magistrate judge could properly weigh the evidence.

In similar circumstances, the Ninth Circuit found that a DHS agent intentionally or recklessly omitted information from an affidavit. *See United States v. Perkins*, 850 F.3d 1109, 1116-18 (9th Cir. 2017). In *Perkins*, also a child pornography case, the Ninth Circuit found that the agent's failure to provide the magistrate judge with copies of the suspected child pornography images was an intentional or reckless omission because the agent's description of the photos omitted key information. *See id.* at 116 ("We conclude that Agent Ensley omitted relevant information from the affidavit that resulted in the misleading impression that image 989.jpg was unequivocally child pornography."). As in *Perkins*, here Agent Ruiz "selectively included information bolstering probable cause, while omitting information that did not." *Id.* at 1117. As the *Perkins* court observed, "[w]e have recognized that an affiant can mislead a magistrate '[b]y reporting less than the total story, [thereby] . . . manipulat[ing] inferences a magistrate will draw." *Id.* at 1117-18; *see also United States v. Lull*, 824 F.3d 109, 116-17 (4th Cir. 2016) (holding that an affiant acted at least recklessly by omitting facts about an informant's credibility and "usurp[ed] the magistrate's role" in determining probable cause).

What Agent Ruiz did here regarding the Google images is even more misleading than the agent's affidavit in *Perkins*. First, either intentionally, or with reckless disregard for the truth, Agent Ruiz failed to explain that none of the Google images were associated with the IP address linked to Stevens's residence. Second, Agent Ruiz failed to properly describe the images recovered by Google. Instead, Agent Ruiz opted not to provide a complete and accurate picture of the Google IP data and Google images to the magistrate judge. With the misleading information corrected, there was

20

no longer probable cause to believe the Google images were tied to Stevens's residence.

To prevail on a *Franks* claim Stevens, "must also show that the affidavit purged of those falsities and supplemented by the omissions would not be sufficient to support a finding of probable cause." *Stanert*, 762 F.2d at 782 (citing *Franks*, 438 U.S. at 171-72); *see Perkins*, 850 F.3d at 1119. Admittedly, if the paragraphs regarding the Google images were excised from the warrant affidavit, there would still be probable cause if the Kik images are not suppressed. Recognizing that reality, Stevens still includes this *Franks* argument regarding the Google images to the extent the government or Court relies exclusively on the Google images to attempt to establish probable cause. But Stevens concedes that if the Court finds the Kik images are admissible, then the above *Franks* analysis becomes inapposite.

### IV. CONCLUSION

Agent Ruiz unconstitutionally expanded the search of the Kik image from ONENONLY7210 beyond Kik's private search. That alone is enough to end the inquiry. Because that image was illegally searched and everything that came next was the fruit of that search, the Court should suppress all evidence against Stevens. In addition, Agent Ruiz also unconstitutionally exceeded the scope of Google's private search and Kik's private search of the additional images associated with LOVER7210 and KASEYJ187. Those unconstitutional searches also warrant suppression.

Stevens also should prevail on a separate property-based theory because Agent Ruiz unconstitutionally trespassed on her property. Under that separate theory, all images in the warrant affidavit should also be suppressed, as well as the evidence obtained during the execution of the search warrant.

To the extent the Court relies on the Google images specifically, there is a separate *Franks* problem with those images. Agent Ruiz omitted key information about the IP addresses associated with those images: the IP addresses were not linked to Stevens's residence.

1    At bottom, Agent Ruiz unconstitutionally overreached in his warrantless

2 searches of the images described in the warrant affidavit. Accordingly, the Court should

3 suppress those images under any of the theories mentioned above. Further, the Court

4 should suppress all evidence obtained during, and as a result of, the execution of the

5 search warrant.

6                                        Respectfully submitted,

7                                        CUAUHTEMOC ORTEGA
8                                        Federal Public Defender

9

10   DATED:  September 6, 2022         By   /s/ Howard Shneider

11                                        Stefani Kasey Marie Stevens
                                         Deputy Federal Public Defender
12                                       Attorney for Stefani Kasey Marie Stevens

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28