CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
HOWARD SHNEIDER (Bar No. 309492)
(E-Mail: howard_shneider@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-1456
Facsimile: (213) 894-0081

Attorneys for Defendant
STEFANI KASEY MARIE STEVENS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>        v.<br><br>STEFANI KASEY MARIE STEVENS,<br><br>             Defendant. | Case No. ED CR 19-377-VAP<br><br>**EX PARTE APPLICATION FOR ISSUANCE OF SUBPOENAS AND PRETRIAL PRODUCTION OF DOCUMENTS; DECLARATION OF COUNSEL** |

Stefani Stevens, through her counsel, applies for an order that the subpoenas submitted with this application be issued, and that the costs of process and witness fees be paid in the same manner as are similar costs and fees for subpoenas served on behalf of the government. It is further requested that the subpoenaed documents be ordered returned before the motions hearing and trial, on September 29, 2022.

I conferred with the Assistant United States Attorney Robert Trisotto about the following request. He stated the government's position as follows: The United States believes defendant's request is untimely, seeks irrelevant documents, and is unnecessary in light of the current evidentiary record showing the at-issue images received from Google and Kik were reviewed by employees before Special Agent Ruiz. Nonetheless, the United States does not object to defendant's request to the extent it seeks a return date on the subpoenas before the October 4, 2022 pretrial conference date and, should responses not be received by then, that defendant agree to not use that

as a basis to try to delay the October 4, 2022 pretrial conference date or October 18, 2022 trial date.

This application is made pursuant to Federal Rule of Criminal Procedure 17 and Local Criminal Rule 17-1, *et seq*. The application is based upon the attached declaration of counsel, all files and records in this case, and such further information as may be provided to the Court regarding the application.

                                      Respectfully submitted,

                                      CUAUHTEMOC ORTEGA
                                      Federal Public Defender

DATED: September 19, 2022        By */s/ Howard Shneider*
                                      Howard Shneider
                                      Deputy Federal Public Defender
                                      Attorney for Stefani Kasey Marie Stevens

## DECLARATION OF HOWARD SHNEIDER

I, Howard Shneider, hereby state and declare as follows:

I am a Deputy Federal Public Defender in the Central District of California assigned to represent Stefani Stevens in the above-titled action. I filed a motion to suppress on September 6, 2022. The hearing on the motion is currently set for October 4, 2022.

The government has produced discovery to the defense that includes, among other things, law enforcement reports of investigation, a copy of the warrants issued and warrant affidavits filed in the case, a copy of the Kik Interactive, Inc. Child Sexual Abuse and Illegal Material Report and Glossary, a copy of the PhotoDNA Match Reports for the suspected child pornography images flagged by Kik, a copy of the Kik subscriber reports associated with those images, and a copy of the National Center for Missing and Exploited Children CyberTip describing suspected child pornography images flagged by Google.

Early production of the requested documents is authorized by Federal Rule of Criminal Procedure 17(c). Rule 17(c)(1) provides that a subpoena can command not only the appearance of a witness but also the production of documents. Rule 17(c)(1) then provides that the Court may direct such items produced before trial and be subject to inspection by counsel.

Rule 17 also provides that the costs of service and witness fees be paid in the same manner as similar costs and fees are paid for witnesses subpoenaed on behalf of the government. *See* Fed. R. Crim. Pro. 17(b). The proposed order submitted with this application provides for such payment of costs and fees.

I am requesting early production here in order to further investigate the facts underlying the motion to suppress and prepare for a hearing on the motion.

## Statement of Relevant Facts

On November 8, 2019, Agent Ruiz filed an affidavit in support of a warrant to search Stevens's residence at 34184 County Line Road, Space #90, Yucaipa, California

1  92399, and Stevens's person. Ex. A, Warrant Aff., ¶ 1. The affidavit explains that the
2  investigation into Stevens began when Agent Ruiz received information regarding one
3  image of suspected child pornography from Kik.

4  **A.   Kik's process for identifying suspected child pornography relied on the**
5  **automated software program PhotoDNA.**

6  Before going further, it is useful to back up to explain what exactly happened for
7  the one image and associated records to make their way to Agent Ruiz. Kik is a mobile
8  application on which individuals can set up an account and use the app to send
9  messages to other users. Ex. A ¶¶ 19-21. Kik identifies child pornography by using
10 digital hash value matches to previously-identified child pornography images. *Id.* ¶ 24.
11 "A hash value is (usually) a short string of characters generated from a much larger
12 string of data (say, an electronic image) using an algorithm[.]" *United States v.*
13 *Ackerman*, 831 F.3d 1292, 1294 (10th Cir. 2016). Kik utilized PhotoDNA software to
14 automatically scan user-uploaded files to flag images of suspected child pornography.
15 Ex. A ¶ 25. As described in the Agent Ruiz's warrant affidavit, "PhotoDNA creates a
16 unique digital signature (known as a 'hash') of an image which is then compared
17 against signatures (hashes) of other photos to find copies of the same image." *Id.* ¶ 24.
18 Kik had a database of previously-identified child pornography images, and all of those
19 images had an assigned hash value. PhotoDNA would then scan newly-uploaded
20 photos to see if their hash values matched the hash value of any of the images in the
21 database.

22 The warrant affidavit explains, "According to information provided by a Kik
23 Law Enforcement Response Team Lead, all suspected child pornography images and
24 videos reported via PhotoDNA is reviewed by a member of the Kik Law Enforcement
25 Response Team before a report is forwarded to law enforcement authorities." Ex. A ¶
26 25. It appears this statement in the warrant affidavit is based on information contained
27 in a document titled Kik Interactive, Inc. Child Sexual Abuse and Illegal Material
28 Report and Glossary (hereinafter "Kik Report"), which was provided in discovery and

is attached as Exhibit B. The report includes a *nota bene* that states, "NB: From the time of implementation of PhotoDNA technology, a Kik employee has reviewed all images identified by PhotoDNA technology before reporting the image to law enforcement." Ex. B at p. 3.

On September 15, 2022, the government provided additional discovery regarding Kik's policies and procedures. Specifically, an affidavit dated May 2, 2019, from Rachel McEwen, a law enforcement response team lead at Kik; and the transcript of a deposition that took place on September 28, 2021, with Yves Savard, a content moderation team lead at Kik. *See* Exs. C & D. Both the McEwen affidavit and Savard deposition echo the conclusions in the Kik Report: namely that a Kik employee must review images identified by PhotoDNA before forwarding the images to law enforcement.

What is missing from the Kik records provided in discovery, however, is any documentation that verifies or even indicates that a Kik employee reviewed any of the *specific Kik image files* mentioned in the warrant affidavit. Instead, the government appears to rely solely on the general policies and procedures described in the Kik Report, McEwen affidavit, and Savard deposition to conclude that someone at Kik reviewed the images at issue here.

At the time Kik identified the image that began this investigation, Kik was located and operating in Canada. Ex. A ¶ 24. Under Canadian law, Kik was required to report any suspected child pornography images discovered on the platform to Canadian law enforcement. *Id.* The Canadian authorities would then review the IP addresses in the Kik report and forward reports with U.S. IP addresses to the HSI Office Attaché in Ottawa. *Id.* ¶ 26. That office would then send the records to the HSI Cyber Crimes Center (C3), which would then forward the records to the applicable local HSI field office. *Id.*

//
//

**B. Agent Ruiz opened and viewed the initial image file forwarded by Kik, which led him to take further steps in the investigation.**

### 1. Information provided by Kik.

The warrant affidavit explains that in August 2019 Agent Ruiz received information from HSI C3 that in April 2019 Kik identified the user ONENONLY7210 as uploading one image of suspected child pornography. Ex. A ¶ 27. Kik found this out because PhotoDNA flagged the image. *Id.* The information provided by Kik included a Subscriber Data Report with the account's registration and login information and a copy of the image identified by PhotoDNA. *Id.* In September 2019, Agent Ruiz opened the image file and reviewed the image identified by PhotoDNA. *Id.* ¶ 28. The affidavit describes the image as depicting a nude male adult vaginally penetrating an infant female's vagina. *Id.*

### 2. Information missing from the Kik records.

While Kik provided a copy of the image and information about when and where the image was uploaded, Kik did not provide any records that indicate whether a human being at Kik reviewed the image uploaded by user ONENONLY7210. As described above, the Kik Report states that in all cases involving PhotoDNA "a Kik employee has reviewed all images identified by PhotoDNA technology before reporting the image to law enforcement." Ex. B at p. 3. But the statement in the Kik Report and the policies and procedures described in the McEwen affidavit and Savard deposition are the only evidence here that anyone at Kik reviewed the image. Exs. C & D. There are no records from Kik that show who, if anyone, actually viewed the image. There are also no records from Kik that show what, if any, determination anyone at Kik made as to whether the image was in fact child pornography.

### 3. Agent Ruiz's further investigation based on Kik records.

Viewing the image from the ONENONLY7210 Kik account led Agent Ruiz to take further investigative steps. He reviewed the information in the Subscriber Data Report, which included the IP address from which the image was uploaded as well as

the IP addresses used by the account on different dates and times. Ex. A ¶¶ 29-31. Agent Ruiz then further investigated three IP addresses associated with the Kik account. *Id.* ¶¶ 32-35. Based on his investigation, he learned that one of the IP addresses was associated with 34184 County Line Road, Space #90, Yucaipa, California 92399—Stevens's residence. The link between the IP address and Stevens's residence is what led Agent Ruiz to seek a search warrant for that residence. Agent Ruiz also looked Stevens up in search databases and found some of her social media accounts. *Id.* ¶¶ 36-40.

### C. As part of Agent Ruiz's continued investigation, he requested and received records of a CyberTip from Google.

On October 30, 2019, Agent Ruiz requested that the National Center for Missing and Exploited Children (NCMEC) search its databases for any reports related to the information Agent Ruiz had at that point regarding Stevens. Ex. A ¶ 41. The next day, NCMEC responded that CyberTip 49677716 may be related to Stevens. *Id.* ¶ 42. Agent Ruiz then got a copy of the CyberTip from Detective Brian Arias, an LAPD ICAC Taskforce member. *Id.* ¶¶ 42-43. According to the CyberTip, Google reported to NCMEC that it found images of suspected child pornography stored in the Google Photos Infrastructure in an account registered with the name SS and email addresses associated with Stevens. *Id.* ¶ 43. Agent Ruiz reviewed seven images in the CyberTip and described them in the warrant affidavit as depicting a prepubescent female in different poses. *Id.* ¶ 44.

#### 1. Omissions from the affidavit.

What Agent Ruiz omits from the affidavit is that the CyberTip included IP addresses associated with the Google account, and none of those IP addresses were the same IP address associated with the Kik account that resolved to Stevens's residence. *See* Ex. E, CyberTip, at USA_0000615, USA_0000619-20 (listing IP addresses, none of which are 172.250.146.2, the IP address associated with Stevens's residence). In

7

other words, none of the IP addresses associated with the Google account were related to the residence Agent Ruiz sought to search via the requested warrant.

Agent Ruiz also omitted the fact that his descriptions of the images conflict with Google's descriptions. The affidavit describes the subject of the photos as a "prepubescent female, appearing to be under the age of 12 years old." Ex. A ¶ 44(a). But in the CyberTip, Google classified each photo as falling into category B and depicting a pubescent female. *See* Ex. E at USA_0000619 (explaining Google's categories for prepubescent and pubescent); id. at USA_0000621-22 (describing all but two of the images as showing a pubescent female).

### 2. Information contained in the CyberTip that is missing from the Kik records.

Unlike the Kik records described above that contained no information about whether the individual image was reviewed by a Kik employee, the CyberTip includes information indicating that a Google employee reviewed each image before forwarding it to NCMEC. For each image, there is a line that says, "Did Reporting ESP view entire contents of uploaded file?" And the answer for each image is "Yes." Ex. E at USA_0000616-18. The CyberTip explains, "With respect to the portion of this CyberTip containing the heading: 'Was File Reviewed by Company?', when Google responds 'Yes' it means the contents of the file reported were viewed by a person concurrently to or immediately preceding the sending of the CyberTip." *Id.* at USA_0000614. Thus, for the CyberTip there is at least some evidence that a human reviewed each image before sending the image to law enforcement. Nonetheless, there is still key information missing, such as the identity of the Google employee, the date the image was reviewed, how much time the employee spent reviewing each image, and the employee's training in detecting child pornography.

//
//
//

**D.     During the course of Agent Ruiz's investigation, he received additional Kik leads related to Stevens.**

    **1.     Information provided Kik.**

On November 6, 2019, Agent Ruiz received additional records from HSI C3 that had been forwarded by Kik. Ex. A ¶ 45. Kik reported that PhotoDNA identified the user account LOVER7210 as uploading two suspect child pornography images, one of which was uploaded on the IP address associated with Stevens's residence. *Id.* Agent Ruiz opened the image and viewed it. *Id.* ¶ 46. The affidavit describes the image as depicting a male adult's penis resting on the lips of an infant. *Id.*

On November 7, 2019, HSI C3 forwarded Agent Ruiz another Kik lead. *Id.* ¶ 47. Through PhotoDNA, Kik identified a suspected child pornography image uploaded by user KASEYJ187 from the same IP address associated with Stevens's residence. *Id.* ¶¶ 47-48. Agent Ruiz opened the file and viewed the image, which the affidavit describes as an infant with her buttocks spread by an adult person's hand. *Id.* ¶ 48.

    **2.     Information missing from Kik records.**

As with the first Kik image that sparked the entire investigation, there are no records as to the images uploaded by LOVER7210 or KASEYJ187 that indicate whether a Kik employee reviewed the images. We are again left only with the statement in the Kik Report and statements in the McEwen affidavit and Savard deposition that someone from Kik always reviewed images flagged by PhotoDNA. Ex. B at p 3; *see* Exs. C & D. But there are no records to substantiate that a Kik employee viewed these specific images.

**E.     Agent Ruiz executed the search warrant, interrogated Stevens, got consent to take over her online accounts, and obtained further evidence.**

Based on the information in the affidavit, Magistrate Judge Sheri Pym issued a search warrant on November 8, 2019, authorizing the search of Stevens's residence and her person. Ex. A at USA_0000107. That same day, Agent Ruiz and other law

9

enforcement personnel executed the search warrant at Stevens's residence. Agent Ruiz interrogated Stevens at her residence. During the interrogation, Stevens admitted to viewing child pornography online, including some of the images associated with the Kik and Google accounts. Compl., Dkt. 1, ¶¶ 12-18. That day Stevens signed a form titled Consent to Assume Online Identity that gave Agent Ruiz permission to take over her online accounts. A search of those online accounts revealed further images and videos of suspect child pornography. Based on what he learned from the investigation, Agent Ruiz later applied for and obtained a search warrant for Stevens's Google accounts. The evidence from those accounts is described in the government's motion in limine to allow the introduction of Google records. Dkt. 40.

Based on the evidence from the various online accounts and Agent Ruiz's additional investigation, the government ultimately filed an indictment charging Stevens with obtaining custody of a minor with intent to produce child pornography and charges of production, distribution, and possession of child pornography. Indictment, Dkt. 11.

### F. The requested records are necessary to fully litigate the motion to suppress.

Stevens filed a motion to suppress on September 6, 2022, arguing that under *United States v. Wilson*, 13 F.4th 961 (9th Cir. 2021), Agent Ruiz impermissibly exceeded the scope of Kik's and Google's private searches. Dkt. 55. I made an oral discovery request from the government for the same documents referenced in this ex parte application on August 31, 2022. I followed up with a formal written discovery request letter on September 2, 2022. Ex. F. I have not yet received any responsive discovery beyond the generalized information in the McEwen affidavit and Savard deposition, which is part of the reason why I am requesting the subpoenas.

I have not reached out to Kik or Google directly to request these records. I have not done so because after speaking to colleagues about this issue, it is my understanding that Kik and Google will not provide records in response to requests

from defense counsel. In addition, the most recent Kik Law Enforcement Guide makes clear Kik will only provide the requested records in response to a court order. The Law Enforcement Guide states:

> We disclose account records and certain user non-content data in accordance with our Terms of Service and applicable law and must receive a legal order to consider disclosing content data in accordance with applicable law. This means to compel any user-data law enforcement is required to cooperate with the US federal, state, or local governments through an appropriate legal mechanism for the type of data being sought. Kik will only accept valid legal process (warrant or subpoena/summons) from a US federal, state, or local governmental entity or court.

*See* Kik Law Enforcement Guide, at p. 10, *available at* www.kik.com/uploads/files/Kik%20Law%20Enforcement%20Guide-Final%202021.pdf

Based on the above, I believe the requested subpoenas are the only available avenue to obtain the requested records.

**Argument**

The party seeking an early-return subpoena must establish that the information sought is, among other things, relevant, admissible, and specific. *See United States v. Nixon*, 418 U.S. 683, 700 (1974) (adding the documents sought must "not [be] otherwise procurable reasonably in advance of trial by exercise of due diligence," that "the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial").

The *Nixon* factors of relevancy and specificity are met as I am requesting narrow and specific records from Kik and Google that are central to the factual disputes underpinning the motion to suppress. Under *Wilson*, the requested records are relevant to the Fourth Amendment suppression analysis. If there are no records from Kik

11

showing a Kik employee reviewed each of the Kik images at issue, then that supports the argument in the motion to suppress. As to the Google images, if there are no further records about who at Google viewed the images and under what circumstances, that likewise would support the argument in the motion.

The requested records are admissible for purposes of the motion to suppress hearing. They most likely qualify as business records under Federal Rule of Evidence 803(6). And regardless, they are admissible for purposes of the Court's analysis under *Wilson* regarding the scope of Kik's and Google's private searches of the relevant images.

I have also exercised diligence in trying to obtain the records by other means. I made a discovery to the request to the government, but still have not received an adequate response. Moreover, the requested records would be in the custody of Kik and Google as opposed to the government, so the most direct way to obtain the records is through the requested subpoenas.

Based on the above, the *Nixon* factors are satisfied and issuance of the subpoenas is appropriate.

## Requested Records

In order to support the defense's motion to suppress, I am seeking to subpoena the following categories of documents, which constitute potentially material, admissible evidence at a hearing on the motion to suppress:

G.  **Kik records**

   **1.  Records related to the suspected child pornography image uploaded from user ONENONLY7210 on April 14, 2019.**

For the image referenced in paragraph 27 of the warrant affidavit—the image uploaded from user ONENONLY7210 on April 14, 2019:

   a.  Any records from Kik that indicate whether a human being opened the image file and reviewed the file and when and where the person opened the image file.

   b. Any records from Kik that detail what the review of this specific image involved and how and if the reviewer determined the image to be child pornography.

**2. Records related to the suspected child pornography images uploaded from user LOVER7210 on May 8, 2019.**

For the image referenced in paragraph 46 of the warrant affidavit—the image uploaded by user LOVER7210 on May 8, 2019:

   a. Any records from Kik that indicate whether a human being opened the image file and reviewed the file and when and where the person opened the image file.

   b. Any records from Kik that detail what the review of this specific image involved and how and if the reviewer determined the image to be child pornography.

**3. Records related to the suspected child pornography image uploaded from user KASEYJ187 on May 21, 2019.**

For the image referenced in paragraph 48 of the warrant affidavit—the image uploaded by user KASEYJ187 on May 21, 2019:

   a. Any records from Kik that indicate whether a human being opened the image file and reviewed the file and when and where the person opened the image file.

   b. Any records from Kik that detail what the review of this specific image involved and how and if the reviewer determined the image to be child pornography.

**H. Google records.**

**1. Records related to the images Google reported to NCMEC in CyberTip 49677716.**

For the images referenced in paragraph 44 of the warrant affidavit—the images Google reported to NCMEC on May 17, 2019, that came from an account registered

with the name SS and the email oneandonly7210@gmail.com, and were summarized in CyberTip 49677716:

    a. Any records from Google that show who at Google reviewed each image file and when and where they reviewed the image file.

    b. Any records from Google that detail what the review of each image involved and how and if the reviewer determined the image to be child pornography.

### Conclusion

I am requesting the early return of the subpoenaed documents so that the defense can adequately prepare for and present arguments at the motion to suppress hearing.

Stevens is unable to pay for the witness fees in this case.

For the reasons set forth above, I request that the Court approve the order lodged with this application and provide for the subpoenas to be issued and returned prior to hearing and/or trial, on September 29, 2022.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: September 19, 2022     By /s/ *Howard Shneider*
                                                    Howard Shneider
                                                    Deputy Federal Public Defender