CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
HOWARD SHNEIDER (Bar No. 309492)
(E-Mail: howard_shneider@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-1456
Facsimile: (213) 894-0081

Attorneys for Defendant
STEFANI KASEY MARIE STEVENS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>      v.<br><br>STEFANI KASEY MARIE STEVENS,<br><br>           Defendant. | Case No. ED CR 19-377-VAP<br><br>**REPLY IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE** |

Stefani Stevens, through her counsel, files her reply in support of her motion to suppress evidence (Dkt. 55).

                              Respectfully submitted,

                              CUAUHTEMOC ORTEGA
                              Federal Public Defender

DATED: September 26, 2022     By  */s/ Howard Shneider*
                              _____
                              Howard Shneider
                              Deputy Federal Public Defenders
                              Attorney for Stefani Kasey Marie Stevens

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 1

    A.    The government failed to meet its burden to show that Agent Ruiz did not exceed the scope of Kik's search of the images at issue here. .............. 1

    B.    The property-based trespass theory involves a distinct analysis from the private search doctrine, and provides a separate basis for suppression. ................................................................................................ 6

    C.    Kik's and Google's terms of service do not render Stevens's expectation of privacy unreasonable. ........................................................ 8

    D.    Suppression is the remedy for the Fourth Amendment violation. ............ 10

    E.    A *Franks* hearing is appropriate. ............................................................... 11

    F.    The Court should hold an evidentiary hearing. ......................................... 11

III. CONCLUSION ............................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Byrd v. United States*,
    138 S. Ct. 1518 (2018) ............................................................................. 9, 10

*Carpenter v. United States*,
    138 S. Ct. 2206 (2018) (Thomas, J., dissenting) ............................................ 10

*Ex parte Jackson*,
    96 U.S. 727 (1877) ................................................................................. 6, 7, 8

*Florida v. Wells*,
    495 U.S. 1 (1990) .............................................................................................. 5

*United States v. Ackerman*,
    831 F.3d 1292 (10th Cir. 2016) ..................................................................... 8, 9

*United States v. Batiste*,
    868 F.2d 1089 (9th Cir. 1989) ......................................................................... 12

*United States v. Camou*,
    773 F.3d 932 (9th Cir. 2014) ........................................................................... 11

*United States v. Caseres*,
    533 F.3d 1064 (9th Cir. 2008) ........................................................................... 5

*United States v. Cotterman*,
    709 F.3d 952 (9th Cir. 2013) (en banc) ...................................................... 6, 7, 8

*United States v. Gamboa-Cardenas*,
    508 F.3d 491 (9th Cir. 2007) ............................................................................. 2

*United States v. Gianatasio*,
    578 F. Supp. 3d 105 (D. Mass 2021) .................................................................. 4

*United States v. Jacobsen*,
    466 U.S. 109 (1984) ................................................................................. 5, 6, 7

*United States v. Johnson*,
    889 F.3d 1120 (9th Cir. 2018) ............................................................................ 4

*United States v. Lara*,
    815 F.3d 605 (9th Cir. 2016) ............................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

*United States v. Leon*,
    468 U.S. 897 (1984)..................................................................................11

*United States v. Phillips*,
    32 F.4th 865 (9th Cir. 2022) ....................................................................6, 7

*United States v. Taylor*,
    636 F.3d 461 (8th Cir. 2011) ........................................................................5

*United States v. Thomas*,
    447 F.3d 1191 (9th Cir. 2006) ......................................................................9

*United States v. Vasey*,
    834 F.2d 782 (9th Cir. 1987) ...............................................................10, 11

*United States v. Wanless*,
    882 F.2d 1459 (9th Cir. 1989) ......................................................................5

*United States v. Wilson*,
    13 F.4th 961 (9th Cir. 2021) .........................................................................1

*Whren v. United States*,
    517 U.S. 806 (1996)......................................................................................5

*Wong Sun v. United States*,
    371 U.S. 471 (1963)......................................................................................1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government has not met its burden to establish the contours of the private search on which it relies. It improperly relies solely on Kik's procedures without any evidence those procedures were followed here. That is simply not enough to meet the high burden of justifying a warrantless search. Because the government fails to meet its burden, suppression is required. The result is the same under either a reasonable-expectation-of-privacy or a property-based analysis. Moreover, the terms of service do not save the illegal search, and neither does the good faith exception. For the reasons outlined in the motion and below, the Court should grant the motion.

## II. ARGUMENT

The government fails to establish that a Kik employee examined any of the images that Kik forwarded to law enforcement. While Yvis Savard's deposition testimony refers in general terms to Kik's procedures, it does not confirm those procedures were followed here. Unlike the Google records in the CyberTip that at least include a record that a Google employee reviewed the images, there are no such records from Kik. The government bears the burden of establishing an exception to the warrant requirement. *See United States v. Wilson*, 13 F.4th 961, 971 (9th Cir. 2021) ("The government bears the burden to prove . . . [the] warrantless search was justified by the private search exception to the Fourth Amendment's warrant requirement."). It is not on the defense to offer any evidence whatsoever. And without the pertinent evidence from the government that someone at Kik actually viewed the images before Agent Ruiz, the government fails to meet its burden.

A. **The government failed to meet its burden to show that Agent Ruiz did not exceed the scope of Kik's search of the images at issue here.**

As an initial matter, the government did not dispute that if the first Kik image was illegally searched, then everything that came after must be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 485-86 (1963). By failing

1 | to argue that the evidence obtained as a result of that first Kik image was not fruit of the
2 | poisonous tree, the government has waived that claim. *See United States v. Gamboa-*
3 | *Cardenas*, 508 F.3d 491, 502 (9th Cir. 2007). Thus, the Court need only analyze
4 | whether Agent Ruiz exceeded the scope of the private search of the first Kik image. If
5 | the answer is "yes," then the Court must suppress all of the evidence against Stevens.

6 | While the government complains that "defendant has offered nothing more than
7 | pure speculation that the images were not reviewed," Opp'n at 25 n.9, in reality it is the
8 | government that speculates by concluding Kik followed its procedures here without any
9 | concrete evidence to support its conclusion. The government relies on portions of Yvis
10 | Savard's deposition testimony in an attempt to shore up its position. But Savard's
11 | testimony does not establish Kik's procedures were followed here.

12 | Importantly, Savard explained that there should be a record of who at Kik
13 | reviewed each image flagged by PhotoDNA. When asked whether it was possible to
14 | know who at Kik reviewed each PhotoDNA match, Savard stated that "[i]n the user
15 | metrics, they would actually show who it was that did the review." Savard Decl., Ex. 1
16 | at 23:1 & 24:1-15. Later in the deposition Savard reiterated that "there was a record" of
17 | the Kik employee who would have reviewed the image after it was flagged by
18 | PhotoDNA. *Id.* at 79:1-14. Thus, if in fact someone at Kik reviewed the first Kik image
19 | here, Kik should have a record of who that person was. But, without explanation, that
20 | record has not been produced. And without that record, it is the government that is
21 | speculating when it claims someone from Kik must have viewed the images solely
22 | because that was Kik's policy.

23 | The records from Google relayed in the CyberTip in this case serve as a useful
24 | point of comparison. For the reasons articulated in the motion, the information in the
25 | CyberTip is insufficient to establish that Agent Ruiz did not exceed the scope of
26 | Google's private search. *See* Mot. at 13-14. Nonetheless, the fact that the CyberTip at
27 | least listed each image file and further specified that a Google employee reviewed each
28 | image shows that such records are common and should have been maintained by Kik.

1 | Instead, the government relies solely on Kik's procedures, and fails to come forward
2 | with any records specific to Kik's search in Stevens's case.
3 |   In addition, the parts of Savard's testimony the government highlights are not as
4 | straightforward as the government claims. Although the government argues that
5 | someone from Kik would have had to view an image in order for a report to be
6 | generated, that is not what Savard stated. Savard explained that "once we determine
7 | that [an image] was illegal, we would generate a report. So once I have that, I would
8 | download—I would just click on the user's name, and then it would download the
9 | image, it would download a pdf with the last 30 days of IP addresses, and it would
10 | download an Excel spreadsheet with the hash that it matched, the actual hash, and the
11 | images as well." *Id.* at 22:9-16. Based on Savard's description, a Kik employee could
12 | "click on the user's name" and "download the image" without actually viewing the
13 | image. And that makes sense, considering each "bucket" of images might have as many
14 | as 500 images in it. *Id.* at 51:5-7. It is entirely possible that after reviewing a group of
15 | images in a given bucket on a given day, the Kik employee may have just assumed the
16 | rest of the images were also child pornography, and generated a report for each
17 | remaining image without actually viewing each image.
18 |   The government asserts that once an image was confirmed as child pornography,
19 | a Kik employee viewed the image a second time when downloading the image for law
20 | enforcement "to ensure the downloaded image was not corrupt." Opp'n at 11 (quoting
21 | Savard Decl., Ex. 1 at 25:4-15). The government further claimed that "it was not
22 | possible for an image detected by PhotoDNA to be sent to law enforcement without
23 | manual review." Opp'n at 11. But these claims mischaracterize Savard's testimony.
24 |   Per Savard, first there would be a "PhotoDNA hash hit." Savard Decl., Ex. 1 at
25 | 23:19-23. Then, the image would go into a hub for review. *Id.* But, once there, the Kik
26 | employee could "just click on the user's name" and that would download IP address
27 | data, an Excel spreadsheet with the hash value, and the image—in other words, all the
28 | files would be downloaded together. *Id.* at 22:9-16. All of these files together

constituted "a report." *Id.* And then once all the reports were downloaded, they were "packaged in a folder." *Id.* at 25:4-15. The image was one part of the report that was forwarded to law enforcement. *Id.* A Kik employee would "look at the folder [of all the files] to make sure nothing was corrupt" before sending the report to law enforcement. *Id.* But that does not mean that the Kik employee actually opened the image file. To the contrary, the Kik employee may have simply checked to see if the file was still there in the report and not corrupted, and then forward all the files in the report to law enforcement.

The government relies on a nonbinding out-of-circuit district court case, *Gianatasio*, to support its argument. Opp'n at 11-12. But the *Gianatasio* court failed to even address the proper legal standard: that it is the government's burden to justify an exception to the warrant requirement. *See United States v. Gianatasio*, 578 F. Supp. 3d 105 (D. Mass 2021) (failing to mention the government's burden). Without properly allocating the burden, the court simply credited the government's argument that Kik must have complied with its procedures. The cursory and improper analysis cannot support the government's conclusory arguments here. Just because a policy is in place does not mean it is always followed. *Gianatasio* was wrongly decided, is not binding, and should not be followed by the Court here. The same goes for *Tolbert*, another nonbinding out-of-circuit district court case that followed the same logic as *Gianatasio*.

A useful point of comparison is the inventory search exception to the warrant requirement. In that context, caselaw establishes that the mere existence of policies and procedures alone cannot justify such a search. Instead, the government must show the police actually followed those policies in the given case. The Ninth Circuit has repeatedly held purported inventory searches invalid and suppressed their fruits, even if the officers had the authority to conduct an inventory search, where the officers conducting the searches failed to follow proper procedures and used the inventory search as a pretext for investigation. *See, e.g., United States v. Johnson*, 889 F.3d 1120,

4

1127-29 (9th Cir. 2018); *United States v. Wanless*, 882 F.2d 1459, 1463-64 (9th Cir. 1989); *see also United States v. Taylor*, 636 F.3d 461, 464-65 (8th Cir. 2011).

   To allow for an exception to the warrant requirement whenever officers theoretically could have conducted a lawful inventory search would completely undermine the enforcement of rules governing inventory searches, which are meant to maintain a carefully limited exception to the Fourth Amendment's general probable cause and warrant requirement. *See Whren v. United States*, 517 U.S. 806, 811-12 (1996); *Florida v. Wells*, 495 U.S. 1, 4 (1990) ("[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."); *United States v. Caseres*, 533 F.3d 1064, 1074 (9th Cir. 2008).

   The caselaw prescribing careful boundaries around the inventory search exception would be contravened if the courts admitted evidence every time police officers *theoretically* could have discovered evidence through a lawful inventory search. Such a rule would allow officers to use inventory searches as "a ruse for a general rummaging in order to discover incriminating evidence," *Wells*, 495 U.S. at 4, so long as it later turned out the officers could have had a valid basis to conduct an inventory search. The same concept applies to the Kik policies here. If we could just assume that Kik followed its procedures, then it would never matter if a Kik employee actually viewed an image in a specific case. That cannot be: to meet its burden, the government must show that a Kik employee reviewed the specific images in *this* case.

   At bottom, "the legality of the governmental search must be tested by the scope of the antecedent private search." *United States v. Jacobsen*, 466 U.S. 109, 116 (1984). Here, the Court has no details of that purported antecedent private search beyond a generalized policy. Because the government cannot demonstrate when, where, by whom, or how the initial purported private search took place, the government cannot establish the subsequent search by Agent Ruiz did not exceed that private search. Accordingly, given the government's failure to provide any details about what Kik did

5

in *this* case, it cannot meet its threshold burden to establish the contours of the predicate private search, and suppression is warranted.

**B.  The property-based trespass theory involves a distinct analysis from the private search doctrine, and provides a separate basis for suppression.**

As explained in the motion, the Kik and Google files here are Stevens's property for Fourth Amendment purposes. *See* Mot. at 14-18; *Ex parte Jackson*, 96 U.S. 727, 733 (1877) ("[l]etters and sealed packages" fall within "[t]he constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures."); *United States v. Cotterman*, 709 F.3d 952, 964 (9th Cir. 2013) (en banc). An individual's property interest remains unaffected by the frustration of their privacy interest. Roderick O'Dorisio, *"You've Got Mail!" Decoding the Bits and Bytes of Fourth Amendment Computer Searches After* Ackerman, 94 Denv. L. Rev. 651, 665 (2017) ("a person's property rights are not eroded when a private party searches (i.e., trespasses) the property.").

The government's argument rests on *United States v. Phillips*, 32 F.4th 865 (9th Cir. 2022). Far from binding precedent, *Phillips* held the defendant's fiancé's conduct in revealing the contents of his computer at the direction of a detective did not exceed the scope of her previous private search. *See id.* at 869 ("when Windes accessed the child pornography on Phillips's computer at the sheriff's office, she merely mimicked her earlier private search.") (cleaned up).

The *Phillips* court only briefly addressed a *Jones*-type property argument at the end of the opinion in dicta that was not necessary to its holding. The court cited *Jacobsen*, and opined that since *Jacobsen* didn't find a problem with the trespass by the FedEx employees and DEA agents, the *Jacobsen* court implicitly blessed the ability of law enforcement to trespass on private property. *Id.* at 873-75. Beyond being dicta, the court's analysis in *Phillips* misreads *Jacobsen*. *Jacobsen* didn't discuss the property-based theory because the theory was not the basis for the court's decision.

//

6

The *Phillips* court explained that "*Jones* did not involve any aspect of the private search exception, nor did it reference *Jacobsen*." *Id.* at 874. But *Jones* does not mention *Jacobsen* for the same reason *Jacobsen* did not address the property-based trespass theory: that was not the basis for the Supreme Court's decision. In other words, *Jacobsen* was a case that analyzed the facts and reached a decision under the *Katz* reasonable-expectation-of-privacy rubric, whereas *Jones* analyzed the facts and reached a decision under the property-based theory. *Jones* did not have to overrule *Jacobsen* because the issues in *Jacobsen* were not the basis for the holding in *Jones*. Accordingly, there is nothing about either *Jones* or *Jacobsen* that precludes the Court from applying the property-based theory here.

When applying the property-based analysis, the only logical conclusion is that Agent Ruiz unconstitutionally trespassed on Stevens's property. For the reasons laid out in the motion, the property-based theory applies equally to the Kik and Google images. But the theory is particularly pertinent to the Kik images because the images were included in messages sent from Stevens to another user. In this way, the Kik messages were the equivalent of mail. In *Ex Parte Jackson*, 96 U.S. 727, 733 (1877), the Supreme Court held, "[l]etters and sealed packages . . . in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles." It further explained, "[t]he constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household." *Id.*

This is equally true of the Kik messages. As the Ninth Circuit held in *Cotterman*, the data stored in a digital device "implicates the Fourth Amendment's specific guarantee of the people's right to be secure in their papers. The express listing of papers

7

reflects the Founders deep concern with safeguarding the privacy of thoughts and ideas—what we might call freedom of conscience—from invasion by the government." 709 F.3d at 964 (cleaned up).

In other words, a message like one sent through Kik is "a 'paper' or 'effect' for Fourth Amendment purposes." *United States v. Ackerman*, 831 F.3d 1292, 1304 (10th Cir. 2016). Thus, when Agent Ruiz opened the Kik image that was retrieved from a Kik message, it constituted the same brand of trespass as if he had opened the mailed package at issue in *Ex Parte Jackson*. His search therefore violated the property-based theory of the Fourth Amendment, and the fruit of that illegal search must be suppressed.

**C.    Kik's and Google's terms of service do not render Stevens's expectation of privacy unreasonable.**

The government argues that a boilerplate contract of adhesion, accepted by millions with a simple click (and certainly without reading) can wholly strip the users of their fundamental rights. That view is troubling, and turns the Fourth Amendment into a mere parchment promise. Luckily, the government is mistaken.

For one thing, Google and other electronic service providers (ESPs) have previously stated their position that "[t]he Fourth Amendment generally protects users' reasonable expectations of privacy in the contents of emails held by a third-party service provider from warrantless search and seizure by the government, irrespective of whether the service provider has terminated that user's account or whether the user violated the terms governing his relationship with the service provider." Brief of Amici Curiae (Google, et. al. Amicus), *United States v. Miller*, No. 18-5578, at 6-7 (6th Cir. 2018) (available at https://epic.org/amicus/algorithmic-transparency/miller/US-v-Miller-6th-Cir-Corp-Amicus-Brief.pdf), attached here as Exhibit D.

Moreover, as the Electronic Frontier Foundation (EFF) explains in an amicus brief from the *Ackerman* case, "courts have routinely held that individuals have a reasonable expectation of privacy in their email held in accounts operated by third party

8

providers, even when those providers can access emails pursuant to contractual terms of service." Brief of Amicus Curiae (EFF Amicus), *United States v. Ackerman II*, No. 17-3238, at 6 (10th Cir. 2018) (available at https://www.eff.org/document/eff-et-al-amicus-brief-us-v-ackerman-10th-circuit-court-appeals-2018), attached here as Exhibit E. The view of Google and EFF regarding email data applies equally to the Kik and Google data at issue here. The EFF properly summarizes the state of the law:

- "Like the modern cellphone, email accounts today can contain 'a digital record of nearly every aspect of [people's] lives—from the mundane to the intimate.' *Riley*, 134 S. Ct. at 2490 . . . . [E]mail is 'a form of communication capable of storing all sorts of private and personal details, from correspondence to images, video or audio files, and so much more.' *Ackerman*, 831 F.3d at 1304. 'Account,' the Sixth Circuit noted in *Warshak*, is a particularly 'apt word for the conglomeration of stored messages that comprises an email account, as it provides an *account* of its owner's life.' 631 F.3d at 284 (emphasis added)." *Id.* at 7.

- "Individuals enjoy an expectation of privacy in email despite the fact that third parties facilitate the sending and receiving of messages." *Id*. at 9. It follows, therefore, that "[t]erms of service provide a poor vehicle for determining an objective expectation of privacy. Fundamentally, they govern the relationship between the user and the provider, not the user and the government." *Id.* at 13. "[A]s the Sixth Circuit pointed out in *Warshak*, a term of service granting the 'right of access' or 'the mere *ability* . . . to access the contents of a communication cannot be sufficient to extinguish a reasonable expectation of privacy.' 631 F.3d at 286-87 (emphasis in original)." *Id.* at 14.

- "If terms of service dictated expectations of privacy, private actors could unilaterally set the contours of Fourth Amendment protections. The expectation of privacy analysis is intended to describe 'well-recognized Fourth Amendment freedoms,' *Smith*, 442 U.S. at 740 n.5, not the interests of private businesses as advanced by form contracts." *Id.* at 14-15. Thus, "courts have declined to find private contracts dispositive of individuals' expectations of privacy." *Id.* at 15.

By way of example, in *United States v. Thomas*, 447 F.3d 1191, 1198 (9th Cir. 2006), the Ninth Circuit held the "technical violation of a leasing contract" was insufficient to vitiate an unauthorized renter's legitimate expectation of privacy in a rental car. And in *Byrd v. United States*, 138 S. Ct. 1518 (2018), the Supreme Court

confirmed that understanding. It explained that, although an unauthorized driver "constitutes a breach of the rental agreement, and perhaps a serious one, [] the Government fails to explain what bearing this breach of contract, standing alone, has on expectations of privacy in the car." *Id.* at 1529.

The point is clear. Agreements between private parties are between private parties. They do not control the scope of Fourth Amendment protection from government action. Thus, as Google and other ESPs concede, their terms of service could not—and certainly did not—vitiate Steven's reasonable expectation of privacy in her online accounts. The out-of-circuit district court decisions cited by the government do nothing to change this conclusion, and the terms of service do not salvage the unlawful search here.

In addition, regardless of the privacy interest inquiry, the terms of service do nothing to affect Stevens's property-based argument. Google's terms of service, for instance, confirm Stevens's superior interest: "You retain ownership of any intellectual property rights that you hold in that content. In short, what belongs to you stays yours." Opp'n, Eliff Decl., Ex. A, Your Content in our Services; *see Carpenter v. United States*, 138 S. Ct. 2206, 2242 (2018) (Thomas, J., dissenting) (suggesting that this clause in Google's terms of service establishes the user's property right).

**D.      Suppression is the remedy for the Fourth Amendment violation.**

The final issue is remedy. Because there was no warrant, no statute, and no binding appellate precedent authorizing Agent Ruiz's unconstitutional search, the good faith exception cannot apply, and suppression is required. *See United States v. Vasey*, 834 F.2d 782, 789-90 (9th Cir. 1987); *United States v. Lara*, 815 F.3d 605, 613-14 (9th Cir. 2016).

*Vasey* is controlling: "Officer Jensen conducted an illegal warrantless search and presented tainted evidence obtained in this search to a magistrate in an effort to obtain a search warrant. The search warrant was issued, at least in part, on the basis of this tainted evidence. The constitutional error was made by the officer in this case, not by

the magistrate as in [*United States v. Leon*, 468 U.S. 897 (1984)]. The *Leon* court made it very clear that the exclusionary rule should apply (i.e., the good faith exception should not apply) if the exclusion of evidence would alter the behavior of individual law enforcement officers or the policies of their department. Officer Jensen's conducting an illegal warrantless search and including evidence found in this search in an affidavit in support of a warrant is an activity that the exclusionary rule was meant to deter." 834 F.2d at 789 (citations omitted).

      Here, like in *Vasey*, Agent Ruiz "conducted an illegal warrantless search and presented tainted evidence obtained in this search to a magistrate in an effort to obtain a search warrant." *Id.*; *see also United States v. Camou*, 773 F.3d 932, 945 (9th Cir. 2014) ("The Supreme Court has never applied the good faith exception to excuse an officer who was negligent himself, and whose negligence directly led to the violation of the defendant's constitutional rights."). Thus, all evidence from the initial illegal search, including that obtained via the tainted warrant, must be suppressed.

### E.    A *Franks* hearing is appropriate.

      Stevens relies on the argument in the motion as to why a *Franks* hearing is appropriate, but seeks to clarify a factual issue regarding the IP address argument. Stevens's argument is simply that there were IP addresses listed in the Kik reports forwarded to law enforcement that were associated with Stevens, and that none of those IP addresses were present in the CyberTip Google provided to NCMEC. Stevens is not arguing that Agent Ruiz should have included information in the warrant affidavit that he did not yet possess. Instead, the argument is that Agent Ruiz should have pointed out in the affidavit that the IP addresses in the Kik reports associated with Stevens did not match the IP addresses reported in the CyberTip.

### F.    The Court should hold an evidentiary hearing.

      The government submitted declarations and a deposition, which are proffers to substitute for the witnesses' testimony. The defense rejects the government's proffers, and the Court should not consider the witnesses' direct testimony without giving

Stevens her Sixth Amendment right to cross-examine the witnesses. *See* Local Criminal Rule 12-1.3 (providing that "[a]ny declarant in connection with a motion to suppress shall be made available for cross-examination at the hearing of the motion."). Accordingly, if the Court intends to consider the statements in the declarations and the deposition, the defense is entitled to cross-examine the declarants. *See United States v. Batiste*, 868 F.2d 1089, 1091 (9th Cir. 1989). That opportunity is important here, as the government is relying on Kik's procedures to conclude that a Kik employee viewed the images here. As can be seen from both parties' briefs on this issue, there is disagreement about Kik's ability to send images to law enforcement without a Kik employee viewing them first. The Court should permit cross-examination of the witnesses in order to resolve this factual dispute.

### III. CONCLUSION

Agent Ruiz viewed the first Kik image that began the investigation without seeking a warrant. The government has not met its burden to justify the warrantless search. Accordingly, Agent Ruiz's warrantless search violated the Fourth Amendment, and the Court should suppress the first image and everything tainted by that illegal search. This result yields both under a *Katz* analysis and a property-based analysis. And neither the Kik and Google terms of service nor the good faith exception save the illegal search here. Accordingly, suppression is required, and the Court should grant Stevens's motion.