E. MARTIN ESTRADA
United States Attorney
SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office
ROBERT S. TRISOTTO (Cal. Bar No. 314178)
SONAH LEE (Cal. Bar No. 246024)
Assistant United States Attorneys
Riverside Branch Office
    3403 Tenth Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 276-6211/6924
    Facsimile: (951) 276-6202
    Email:    Robert.Trisotto@usdoj.gov
              Sonah.Lee@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 19-00377-VAP |
|---|---|
| Plaintiff, | UNITED STATES' TRIAL MEMORANDUM |
| v. | Trial Date:  October 18, 2022 |
|  | Trial Time:  8:30 a.m. |
| STEFANI KASEY MARIE STEVENS, | Location:    Courtroom of the Hon. Virginia A. Phillips |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Robert S. Trisotto and Sonah Lee, files its trial memorandum for the trial of defendant Stefani Kasey Marie Stevens.

This trial memorandum is based on the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

The United States respectfully requests leave to file additional memoranda as may become appropriate before or during the course of trial.

Dated: October 7, 2022

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office

_/s/_
ROBERT S. TRISOTTO
SONAH LEE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

I.    INTRODUCTION.................................................1

II.   FACTUAL SUMMARY.............................................1

      A.   Defendant is Identified as the Person Uploading Child
           Pornography Images to Kik and Google Accounts...........1

      B.   A Search Warrant is Executed at Defendant's Home and
           Defendant Admits to Producing Child Pornography of
           Victim N..............................................2

      C.   Special Agent Ruiz Searches Defendant's Accounts and
           Finds Large Amounts of Child Pornography Videos and
           Images, and Chats About Child Exploitation...............3

      D.   Defendant Admits to Producing Child Pornography of
           Victim A..............................................5

III.  ELEMENTS OF THE CHARGED OFFENSES............................5

      A.   Obtaining Custody of a Minor with Intent to Produce
           Child Pornography.....................................6

      B.   Production of Child Pornography.........................7

      C.   Distribution of Child Pornography......................7

      D.   Possession of Child Pornography........................8

IV.   TRIAL......................................................9

      A.   Trial Date............................................9

      B.   Trial Length..........................................9

      C.   Stipulations..........................................9

      D.   Pretrial Motions......................................9

      E.   Jury Instructions and Verdict Form....................10

      F.   Witnesses............................................10

V.    LEGAL AND EVIDENTIARY ISSUES...............................10

      A.   Defendant's Statements...............................10

      B.   Displaying Child Pornography Images and Videos..........14

      C.   Non-Child Pornography Photographs and Video Recordings...19

      D.   Google Map...........................................21

E.    Records of Regularly Conducted Activity...................21

F.    Reciprocal Discovery......................................22

G.    Affirmative Defenses......................................22

H.    Scope of Cross-Examination of Defendant...................23

I.    Character and Impeachment Evidence........................23

VI.  CONCLUSION..................................................24

1

**TABLE OF AUTHORITIES**

2

Cases

3  *Fitzpatrick v. United States*,

4     178 U.S. 304 (1971) ......................................... 23

5  *Michelson v. United States*,

6     335 U.S. 469 (1948) ...................................... 23, 24

7  *Taylor v. Illinois*,

8     484 U.S. 400 (1988) ......................................... 22

9  *United States v. Alejandro*,

10    354 Fed. App'x 124 (5th Cir. 2009) ......................... 21

11 *United States v. Arvin*,

12    900 F.2d 1385 (9th Cir. 1990) .............................. 18

13 *United States v. Becht*,

14    267 F.3d 767 (8th Cir. 2001) ............................. 17-18

15 *United States v. Black*,

16    767 F.2d 1334 (9th Cir. 1985) .............................. 23

17 *United States v. Burreson*,

18    643 F.2d 1344 (9th Cir. 1981) .............................. 13

19 *United States v. Fernandez*,

20    839 F.2d 639 (9th Cir. 1988) ............................... 13

21 *United States v. Ganoe*,

22    538 F.3d 1117 (9th Cir. 2008) ........................... 17, 19

23 *United States v. Matta-Ballesteros*,

24    71 F.3d 754 (9th Cir. 1995) ................................ 20

25 *United States v. Mehrmanesh*,

26    682 F.2d 1303 (9th Cir. 1982) .............................. 23

27 *United States v. Miranda-Uriarte*,

28    649 F.2d 1345 (9th Cir. 1981) .............................. 23

*United States v. Oaxaca,*

  569 F.2d 518 (9th Cir. 1978) .................................. 20

*United States v. Perea-Rey,*

  680 F.3d 1179 (9th Cir. 2012) ................................. 21

*United States v. Rearden,*

  349 F.3d 608 (9th Cir. 2003) ................................. 18

*United States v. Salcido,*

  506 F.3d 729 (9th Cir. 2007) ................................. 18

*United States v. Smith,*

  591 F.3d 974 (8th Cir. 2010) ................................. 20

*United States v. Stearns,*

  550 F.2d 1167 (9th Cir. 1977) ................................ 20

*United States v. Vallejos,*

  742 F.3d 902 (9th Cir. 2014) ................................. 14

<u>Statutes</u>

18 U.S.C. § 2251 ........................................... 7, 8

18 U.S.C. § 2251A .......................................... 6

18 U.S.C. § 2252A .......................................... 7

18 U.S.C. § 2256 ........................................... 18

Federal Rule of Criminal Procedure 16 ...................... 22

Federal Rule of Evidence 106 ........................... 13, 14

Federal Rule of Evidence 201 .............................. 21

Federal Rule of Evidence 404 .............................. 12

Federal Rule of Evidence 405 ........................... 23, 24

Federal Rule of Evidence 611 .............................. 23

Federal Rule of Evidence 801 .............................. 13

Federal Rule of Evidence 901 .............................. 20

Federal Rule of Evidence 902 .............................. 22

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3

Defendant Stefani Stevens ("defendant") obtained custody of her

4 then-boyfriend's six-month-old infant relative ("Victim A") so that

5 she could produce child pornography videos of herself performing oral

6 sex on the infant and could share them online with others.  She also

7 produced numerous child pornography photographs of her then-

8 boyfriend's seven-year-old relative ("Victim N") and shared them

9 online with others.  In addition to distributing child pornography,

10 defendant possessed hundreds of other child pornography videos and

11 images in her online accounts.

12

For her conduct, defendant is charged in a First Superseding

13 Indictment with nine counts -- Obtaining Custody of a Minor with

14 Intent to Produce Child Pornography (Count One), Production of Child

15 Pornography (Counts Two to Seven), Distribution of Child Pornography

16 (Count Eight), and Possession of Child Pornography (Count Nine).

17 Trial is set to begin on October 18, 2022.

18

**II.  FACTUAL SUMMARY**

19

The United States expects that the evidence at trial will

20 establish the following facts, among others, beyond a reasonable

21 doubt.

22

    **A.   Defendant is Identified as the Person Uploading Child
          Pornography Images to Kik and Google Accounts**

23

24

Between August 2019 and November 2019, Homeland Security

25 Investigations ("HSI") Special Agent Ruiz received information from

26 the HSI Cyber Crimes Center that online accounts associated with the

27 usernames "onenonly7210," "lover7210," and "kaseyj187" uploaded child

28 pornography images to Kik, a mobile application designed for chatting

and messaging.  The information provided by Kik show that each account was associated with defendant.

For example, subscriber data reports show that the names registered to the accounts include "Stefani," "Kasey" (defendant's middle name), and "Stevens" and the email addresses registered to the accounts include "stevens.stefani515@gmail.com."  Additionally, the child pornography images were uploaded to Kik using an IP address that was assigned to defendant's home in Yucaipa, California.

Special Agent Ruiz also asked the National Center for Missing and Exploited Children ("NCMEC") to search its databases for information associated with defendant.  In response, NCMEC identified Cybertip 49677716 (the "Cybertip").  The Cybertip shows that the Google account registered with the email addresses "onenonly7210@gmail.com" and "stevens.stefani515@gmail.com," as well as a phone number associated with defendant, had seven child pornography images of the same prepubescent female -- later determined to be Victim N -- uploaded to its platform.

**B.    A Search Warrant is Executed at Defendant's Home and Defendant Admits to Producing Child Pornography of Victim N**

After identifying defendant as being connected to the above-named Kik and Google accounts with child pornography, Special Agent Ruiz obtained a search warrant for defendant's home.  On November 8, 2019, HSI agents executed the warrant.  During the search, HSI agents seized digital devices from defendant, including her iPhone, and children's bedding that matched the bedding shown in the child pornography images of Victim N provided in the Cybertip.

After the warrant was executed, Special Agent Ruiz and HSI Special Agent Ibia Caro conducted a *Mirandized* interview of

defendant.  During the interview, defendant admitted to taking between eight to ten nude pictures of Victim N in Victim N's bedroom and in the bathroom about a year prior.  According to defendant, a person on Kik asked her if she had a daughter and, after she responded that she did, the Kik user asked for sexually explicit pictures of her daughter.  Defendant then told Victim N that she needed to take pictures of a rash Victim N allegedly had at the time to send to a doctor and then took nude pictures on her iPhone.  When shown some of the child pornography images of Victim N from the Cybertip, defendant confirmed that those were the photographs that she took of Victim N.

Additionally, defendant gave consent to Special Agent Ruiz to access and use various online accounts, which is where child pornography was distributed or received.  She provided her log-in credentials to a Mega.nz account (oneandonly7210), two Google accounts (oneandonly7210 and 7210onenonly), and three Kik accounts (onenonly7210, kaseyj187, and kaseyj516).

**C.   Special Agent Ruiz Searches Defendant's Accounts and Finds Large Amounts of Child Pornography Videos and Images, and Chats About Child Exploitation**

Special Agent Ruiz accessed each of defendant's accounts.

**Mega.nz account.**  Mega is an Auckland-based company that provides cloud storage and file hosting services and is available through web-based and mobile applications.  While accessing this account, Special Agent Ruiz discovered that it contained hundreds of images and videos of child pornography, including dozens of files of Victims A and N.  Moreover, Special Agent Ruiz reviewed chats between defendant and user "Tommy Pape Pape" in which defendant explains how

1   she is going to watch Victim A so that she can make child pornography
2   videos of herself licking Victim A.

3        Specifically, on May 21, 2022, defendant told Tommy Pape Pape
4   that she was "excited for watching [Victim A] tomorrow i am going to
5   lick her and can't wait to share it with you."  After obtaining
6   custody of Victim A the next day, on May 22, 2019, defendant sent
7   Tommy Pape Pape three child pornography videos that she created of
8   Victim A, including a video of defendant performing oral sex on
9   Victim A.

10        Additionally, on June 28, 2019, defendant sent user Tommy Pape
11   Pape two child pornography images of Victim A that she produced on
12   June 22, 2019.  When Tommy Pape Pape responded that he "love[d] her
13   little clit," defendant responded, "[I]t tastes great" and she "can't
14   wait to have a sexy baby of [her] own to pl[a]y with daily."

15        **Google accounts.**  When Special Agent Ruiz tried to access
16   defendant's oneandonly7210 account (the account associated with the
17   Cybertip), he saw a Google notice that the account had been disabled
18   for violating Google's policies.  This notice is consistent with
19   information in the Cybertip that the account was disabled for
20   uploading child pornography to Google's platform.

21        Although that account was disabled, defendant's other account --
22   7210onenonly -- was not.  Special Agent Ruiz logged in and found a
23   November 4, 2019 Google Hangout chat (which was a mere four days
24   before the November 8, 2019 search warrant execution) between user
25   "Andreas Sommers" and defendant where they discuss how defendant
26   wants to "be pregnant and have babies to lick and finger and f[]ck so
27   bad."  When "Andreas Sommers" asks defendant to show him, defendant
28   sent two child pornography videos she created of herself fingering

1   and licking Victim A.  When "Andreas Sommers" asks for more,

2   defendant sends a child pornography image of Victim N.

3       **Kik accounts.** Special Agent Ruiz determined that two of

4   defendant's three Kik accounts (onenonly7210 and kaseyj187) had been

5   permanently deactivated for violating Kik's Terms of Service.  As to

6   the third account (kaseyj516), Special Agent Ruiz saw one video where

7   a baby was visible but that video did not play.

8       **D.   Defendant Admits to Producing Child Pornography of Victim A**

9       In a *Mirandized* interview on November 12, 2019, Special Agent

10  Ruiz showed defendant screen shots of her Google Hangout chat with

11  user "Andreas Sommer" recovered from defendant's 7210onenonly Google

12  account.  During the interview, defendant said that she recalled this

13  chat with "Andreas Sommer."  She admitted that she "videoed" herself

14  "licking" Victim A, but provided a false exculpatory, as the United

15  States anticipates showing at trial, that it was because someone on

16  Mega was threatening to kill her if she didn't send the videos.

17  **III.  ELEMENTS OF THE CHARGED OFFENSES**

18      Defendant has been charged in a First Superseding Indictment[1]

19  with nine counts -- Obtaining Custody of a Minor with Intent to

20  Produce Child Pornography (Count One), Production of Child

21  Pornography (Counts Two to Seven), Distribution of Child Pornography

22  (Count Eight), and Possession of Child Pornography (Count Nine).

23  Below are the elements of each of those charged offenses.

24

25

26

27

28      [1] The initial Indictment was superseded on September 30, 2022 to
    add an additional jurisdictional circumstance to Count One, or
    specifically, that Victim A was transported in interstate commerce.

1

### A.  Obtaining Custody of a Minor with Intent to Produce Child Pornography

2

3       Count One of the First Superseding Indictment charges defendant

4    with violating 18 U.S.C. § 2251A(b): Obtaining Custody of a Minor

5    with Intent to Produce Child Pornography.  This crime has four

6    elements:[2]

7       First, on or about May 22, 2019, the defendant obtained custody

8    or control of Victim A;

9       Second, at the time, Victim A was under the age of 18 years.

10      Third, the defendant obtained custody or control of Victim A

11   with either:

12      (a) knowledge that, as a consequence of obtaining custody or

13   control, Victim A would be portrayed in a visual depiction engaging

14   in sexually explicit conduct; or

15      (b) the intent to promote the engaging in of sexually explicit

16   conduct by Victim A for the purpose of producing a visual depiction

17   of the conduct; and

18      Fourth, either:

19      (a) the minor traveled in or was transported in or affecting

20   interstate or foreign commerce; or

21      (b) the offer to obtain custody or control of Victim A was

22   communicated or transported using any means or facility of interstate

23   or foreign commerce or in or affecting interstate or foreign commerce

24   by any means, including by computer.

25

26

27

28      [2] The parties filed a Disputed Instruction for Count One of the Indictment.  (ECF No. 72.)  The elements outlined in this section are consistent with the United States' proposed instruction.

6

**B.   Production of Child Pornography**

Counts 2 through 7 charge defendant with Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a), (e).  This crime has three elements under Ninth Circuit Model Jury Instruction No. 20.18.

First, the victim was under the age of eighteen years;

Second, the defendant employed, used, persuaded, induced, enticed, or coerced the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

Third, either:

(a) the defendant knew or had reason to know that the visual depiction would be mailed or transported across state lines or in foreign commerce;

(b) the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce;

(c) the visual depiction was mailed or actually transported across state lines or in foreign commerce; or

(d) the visual depiction affected interstate commerce.

**C.   Distribution of Child Pornography**

Defendant is charged in Count Eight of the First Superseding Indictment with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), (b)(1).  There are four elements for this crime.

First, that the defendant knowingly distributed matter that the defendant knew contained a visual depiction of a minor engaged in sexually explicit conduct;

1     Second, the defendant knew the visual depiction contained in the

2     matter was of a minor engaged in sexually explicit conduct;

3     Third, the defendant knew that production of such a visual

4     depiction involved use of a minor in sexually explicit conduct; and

5     Fourth, that the visual depiction had been either:

6     (a) mailed, shipped, or transported using any means or facility

7     of interstate or foreign commerce or in or affecting interstate or

8     foreign commerce; or

9     (b) produced using material that had been mailed, shipped, or

10    transported using any means or facility of interstate or foreign

11    commerce or in or affecting interstate or foreign commerce by any

12    means including by computer.  *See* Ninth Circuit Model Criminal Jury

13    Instruction No. 20.23 (modified for distribution).

14    ### D.   Possession of Child Pornography

15    Defendant is charged in Count Nine of the First Superseding

16    Indictment with Possession of Child Pornography, in violation of 18

17    U.S.C. §§ 2252A(a)(5)(B), (b)(2).  Under Ninth Circuit Model Criminal

18    Jury Instruction No. 20.23, this crime has four elements.

19    First, that the defendant knowingly possessed matter that the

20    defendant knew contained a visual depiction of a minor engaged in

21    sexually explicit conduct;

22    Second, the defendant knew the visual depiction contained in the

23    matter was of a minor engaged in sexually explicit conduct;

24    Third, the defendant knew that production of such a visual

25    depiction involved use of a minor in sexually explicit conduct; and

26    Fourth, that the visual depiction had been either:

27    (a) mailed, shipped, or transported using any means or facility

28    of interstate or foreign commerce or in or affecting interstate or

8

foreign commerce; or

(b) produced using material that had been mailed, shipped, or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer.

## IV.   TRIAL

### A.   Trial Date

A jury trial is set to begin on October 18, 2022, at 8:30 a.m. Although defendant told the Court at a hearing on September 30, 2022, and the United States as recently as October 6, 2022, that she intends to waive her right to a jury trial, defendant has not done so as of the filing of this Trial Memorandum.

### B.   Trial Length

The United States currently expects that its case-in-chief, including anticipated cross examination, will take about two to three trial days.

### C.   Stipulations

To date, the parties have not entered into any stipulations.

### D.   Pretrial Motions

There are four pretrial motions pending with the Court:

(1) United States' motion *in limine* no. 1 to allow it to introduce records produced by Google LLC into evidence without calling a records custodian to testify (ECF No. 40);

(2) United States' motion *in limine* no. 2 to admit Apple, Inc. records (ECF No. 53);

(3) United States' motion *in limine* no. 3 to preclude improper testimony, evidence, references, and argument at trial (ECF No. 54); and

(4) defendant's motion to suppress evidence (ECF No. 55).

**E.   Jury Instructions and Verdict Form**

On September 30, 2022, the parties filed a Disputed Instruction for Count One of the Indictment, Obtaining Custody of a Minor with Intent to Produce Child Pornography.  (ECF No. 72.)  Because defendant told the Court at a September 30, 2022 hearing that she planned to waive her right to a jury trial, and in accordance with the Court's statements at that hearing, the parties did not file either Proposed Joint Jury Instructions or a Proposed Joint Verdict Form under Rule 8 of the Court's Criminal Motion and Trial Order.

**F.   Witnesses**

The United States presently intends to call the following witnesses in its case-in-chief:

1.   HSI Special Agent Ruiz

2.   HSI Special Agent Hornberger

3.   Victim A's mother

4.   Victim N's father

5.   Victim N

6.   Apple Custodian of Record

7.   Google Custodian of Record

**V.   LEGAL AND EVIDENTIARY ISSUES**

**A.   Defendant's Statements**

The United States intends to introduce two categories of statements made by defendant at trial.

**Category 1:  Defendant's *Mirandized* Interviews**.  The United States anticipates introducing statements from the November 8 and November 12, 2019 *Mirandized* interviews of defendant in its case-in-chief at trial.  As discussed above, defendant admitted during these

interviews that she took between 8 to 10 nude pictures of Victim N and created videos of herself licking Victim A.  As such, these statements are relevant to proving the crimes charged.  Additionally, defendant admitted to using the online accounts in which the child pornography images, videos, and chats were located, including her Mega and Google accounts.  So, these statements are relevant to showing that defendant was, in fact, the person who created and used the accounts at issue.

**Category 2:  Chats About Child Exploitation.**  Defendant engaged in chats about child exploitation with like-minded users on her Mega and Google accounts.  She also shared images and videos from her child pornography collection, including of Victims A and N, during those chats.  These chats are direct evidence of defendant's guilt.

For instance, defendant is charged with obtaining custody of Victim A on May 22, 2019 with knowledge that, as a consequence of taking custody of Victim A, Victim A would be portrayed in a visual depiction engaging in sexually explicit conduct.  Defendant's chat on Mega with Tommy Pape Pape is direct evidence of defendant's knowledge because, the day prior, on May 21, 2019, defendant told Tommy Pape Pape that she is "excited for watching [Victim A] tomorrow" as she is going to "lick her and can't wait to share it with [him]."  Later in the chat, defendant again told Tommy Pape Pape that he knows "how to turn [her] on just wait till tomorrow [she] will have a nice video of [herself] licking a 5 month old and licking her ass and pussy god I can't wait."  Defendant then sent a picture and told Tommy Pape Pape that its Victim A "who I will lick tomorrow."

The United States intends to introduce other chats from defendant's Google accounts that are direct evidence, or inextricably

intertwined evidence, of the crimes charged.[3]  In these chats, defendant expresses her sexual interest in children and her desire to get pregnant so that she can engage in an incestual sexual relationship with her baby.  For example:

- **Max Lover Chat.**  In an April 7, 2019 chat with user "Max Lover," defendant said she wants "Max Lover" to "get [her] pregnant [and] give [her] babies to play with."  When "Max Lover" says he does not like babies, defendant says "then mayb[e] your not for me."

- **Hank Meiser Chat.**  In an August 7, 2019 chat, user "Hank Meiser" asks defendant if she "would like [him] to f[]ck more babies in [her]," to which defendant responds "[h]ell yes so bad" because she "want[s] to play with ou[r] new born so bad."

- **Dan Green Chat.**  In a July 5, 2018 chat with user "Dan Green," defendant said she "had a dream that [she] gave birth to a beautiful baby girl and from the second she came out you took her and licked her right away."

- **EA79JR Chat.**  In a May 11, 2019 chat, defendant told user "EA79JR" that she has a daughter that she "lick[s] and finger[s]" and, after he replies that he wants to watch,

---

[3] Although the United States believes the child pornography chats are direct evidence of, or inextricably intertwined evidence of, the crimes charged, in an abundance of caution, on May 13, 2022, the United States provided notice under Federal Rule of Evidence 404(b) that it may introduce child pornography chat conversations with users Tommy Pape Pape, Andreas Sommer, Hank Meiser, Dan Green, Max Lover, EA79JR, and Justice Lace on the grounds that they are evidence of defendant's intent and knowledge.  To date, defendant has not asserted that the United States' Rule 404(b) notice was insufficient or untimely.

12

defendant sends "EA79JR" a child pornography image of Victim N.

**Both categories of statements are admissible at trial because they are not hearsay.** Neither of these two categories of statements made by defendant are hearsay because they were made by defendant and are being offered against her. *See* Fed. R. Evid. 801(d)(2)(A). Additionally, the statements made by the like-minded users in the chats about child exploitation are not hearsay because, as previously briefed (ECF No. 63 at 5-7), the statements are being offered to provide essential and necessary context for understanding defendant's statements, not to prove the truth of the matter asserted.

**Defendant should not be able to introduce her own statements.** While the United States may use the statements of a defendant against her under Rule 801(d)(2), that Rule may not be relied upon by the defendant because she is not the proponent of the evidence and the evidence is not being offered against her (but rather on her behalf). When the United States offers some of a defendant's prior statements, the door is not thereby opened to the defendant to put in all of her out-of-court statements because, when offered by the defendant, the statements are hearsay. *See* Fed. R. Evid. 801(d)(2); *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir. 1981); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam).

Additionally, that the United States may introduce portions of defendant's statements also does not mean the full statement must be admitted. Under Federal Rule of Evidence 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part - - or any other writing or recorded statement -- that in fairness

13

ought to be considered at the time."  Fed. R. Evid. 106.  Rule 106 "does not . . . require the introduction of *any* unedited writing or statement merely because an adverse party has introduced an edited version."  *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (emphasis in original).  A "complete statement" is only required if it "serve[s] to correct a misleading impression in the edited statement that is created by taking something out of context." *Id.*  Because the United States does not intend to introduce statements that are misleading or taken out of context, defendant should be barred from introducing her own statements.

**B.   Displaying Child Pornography Images and Videos**

In addition to images and videos embedded in the chats about child exploitation discussed above, the United States intends to show a modest number of images and videos from defendant's child pornography collection at trial, including at least the following images and videos of Victims A and N:[4]

| Ex. No. | Count(s) | File Name | Description |
|---|---|---|---|
| 49 | 1, 6 | 2019-05-22 12.22.40 | The video depicts a close up of defendant performing oral sex on Victim A.  During the video, defendant is heard saying to the camera "You like this daddy?" |
| 50 | 1, 6 | 2019-05-22 12.23.12 | The video depicts Victim A laying on her back on a bed.  Victim A's clothing and diaper have been removed exposing her vagina to the camera.  Defendant is seen using her index finger to rub up and down Victim A's exposed vagina.  Defendant can be heard talking to Victim A during the video.  Toward the end of |

---

[4] This is not an exhaustive list of the images and videos that the United States may seek to introduce at trial.  For example, the United States may also seek to introduce the three child pornography videos expressly identified in Count Nine of the Indictment.

14

| | | | | |
|---|---|---|---|---|
| | | | | the video Defendant uses two fingers to spread open Victim A's vagina. |
| 51 | 1, 6 | 2019-05-22 12.22.12 | | The video depicts Victim A laying on her back on a bed.  Victim A is wearing a diaper, size two, with a small blue vertical line on the pelvic area indicative that Victim A has urinated in her diaper.  Defendant's hand is seen removing the front part of the diaper exposing Victim A's genitalia to the camera.  Defendant's hand is seen spreading Victim A's legs apart exposing her vagina to the camera.  Defendant then begins touching Victim A's vagina and partially penetrates Victim A's vagina at times. |
| 52 | 1, 6 | 2019-05-22 12.24.10 | | The video depicts a close up of defendant performing oral sex on Victim A.  During the video, defendant is heard making noises while licking Victim A's vagina. |
| 27 | 2 | 2018-10-31 08.28.50 | | The image depicts Victim N nude laying on her back on top of a white sheet with blue and teal hearts printed on it.  Victim N's legs are spread apart, and defendant's hand is seen touching Victim N's buttocks exposing her vagina and anus to the camera.  The camera is closely focused on Victim N's anus and vagina.  The camera is closely focused on Victim N's vagina and anus, her face is not visible in the photo. |
| 28 | 3 | 2018-11-04 17.14.54 | | The image depicts Victim N nude laying on her back with her legs spread apart exposing her vagina to the camera.  What appears to be defendant's hand is seen pushing aside one of Victim N's legs further exposing Victim N's vagina to the camera.  Victim N is laying on a multi-colored comforter (blue, purple and white) with a pattern of hearts and flowers printed on it.  The camera is closely focused on Victim N's vagina, her face is not visible in the photo. |
| 29 | 3 | 2018-11-04 17.14.49 | | The image depicts Victim N nude laying on her stomach facing away from the camera.  Victim N is laying on a multi-colored comforter (blue, purple and white) with a pattern of hearts and |

| | | | |
|---|---|---|---|
| | | | flowers printed on it.  Defendant's hand is seen pushing aside one of Victim N's legs exposing Victim N's vagina to the camera. |
| 31 | 4 | 2018-11-12 19.03.30 | The image depicts Victim N laying on her back on top of a blue colored comforter. Victim N's legs are bent up and spread apart exposing her vagina to the camera. |
| 32 | 4 | 2018-11-12 19.05.52 | The image depicts a close up of Victim N's vagina as she is laying on her back on top of a blue colored comforter. Defendant's index finger is seen touching Victim N's vagina.  The camera is closely focused on Victim N's vagina, her face is not visible in the photo. |
| 42 | 5 | 2018-11-13 18.29.43 | The image depicts a nude Victim N laying on her back on top of a bedsheet that is with a pattern of pastel colored circles.  Victim N is using her hands to hold up both of her legs exposing her vagina and anus to the camera.  Victim N's face is visible in the photo. |
| 43 | 5 | 2018-11-13 18.29.50 | The image depicts a nude Victim N laying on her back on top of a bedsheet that is with a pattern of pastel colored circles.  Victim N is using her hands to hold up both of her legs exposing her vagina and anus to the camera.  Victim N's face is visible in the photo. |
| 56 | 7 | 2019-06-22 18.19.32 | The image is a photo depicting a close up of Victim A's vagina.  Defendant's hand is seen touching Victim A's labia, spreading it open to the camera.  The photo is closely focused on Victim A's vagina, her face is not visible in the photo. |
| 57 | 7 | 2019-06-22 18.20.27 | The image is a photo depicting a close up of Victim A's vagina.  Defendant's hand is seen touching Victim A's labia, spreading it open to the camera.  Victim A's labia is being spread far enough in this photo causing her urethra to be exposed to the camera.  The photo is closely focused on the Victim A's vagina, her face is not visible in the photo. |
| 60 | 8 | 2019-06-22 18.20.26 | The image depicts a close up of Victim A's vagina. Defendant's hand is seen touching Victim A's labia, causing her |

| | | | |
|---|---|---|---|
| | | | urethra to be exposed to the camera. The photo is closely focused on Victim A's vagina. |
| 61 | 8 | 2019-06-22 18.20.31 | The image depicts a close up of Victim A's vagina.  Defendant's hand is seen spreading Victim A's labia, exposing her urethra to the camera.  Defendant is slightly penetrating the Victim A's vagina with one of her fingers. |

Introducing these images and videos is necessary for numerous reasons.  For one, viewing the child pornography is highly relevant to proving defendant's state of mind.  For example, Exhibit 49 cited in the table above is a video defendant produced on May 22, 2019 of herself performing oral sex on Victim A.  In the video, defendant looks straight at the camera, says, "You like this daddy," and then proceeds to video herself performing oral sex on Victim A for the next about 15 seconds.  A fact finder must see the video to assess defendant's demeanor, body language, facial expressions, and tone, all of which bolster that defendant took custody and control of Victim A with the state of mind required under Count One.  These non-verbal behaviors also corroborate defendant's statements on May 21, 2019 to Tommy Pape Pape that she was "excited" to watch Victim A so that she could "video" herself "lick[ing] her."  Thus, viewing the videos and images is essential to the factfinder's determination of guilt for each count.  *See United States v. Ganoe*, 538 F.3d 1117, 1120 (9th Cir. 2008) (holding that because the United States had to prove knowledge, "the images must be produced so that the jury can determine whether a reasonable person would know of the nature of the images"); *see also United States v. Becht*, 267 F.3d 767, 774 (8th Cir. 2001) ("Only by viewing the images could the jury understand how

17

1  likely it was that even a glance [by defendant] would have revealed

2  the presence of illegal images.").

3      Additionally, the factfinder needs to be able to view the images

4  and videos to determine whether they depict sexually explicit conduct

5  involving a minor.  The term "sexually explicit conduct" is defined

6  to mean actual or simulated:  (a) sexual intercourse, including

7  genital-genital, oral-genital, anal-genital, or oral-anal, whether

8  between persons of the same or opposite sex, or (b) lascivious

9  exhibition of the anus, genitals or pubic area of any person.[5]  18

10 U.S.C. § 2256(2)(A).  So, evaluating whether the nature of the

11 conduct meets this definition and whether the images depict a minor

12 require the factfinder to examine the child pornography.  *See United*

13 *States v. Rearden*, 349 F.3d 608, 614 (9th Cir. 2003) (expert

14 testimony regarding whether the people in the images are children is

15 not necessary when "it is obvious from the pictures themselves that

16 they are of children"); *United States v. Salcido*, 506 F.3d 729, 733

17 (9th Cir. 2007).

18     Finally, the United States also intends to show portions of a

19 video taken by Special Agent Ruiz of his takeover of defendant's Mega

20 account.  This video will show the structure and organization of

21 defendant's child pornography collection on Mega, including how she

22 had a folder called "love" containing five videos depicting sexual

23 abuse of Victim A and an entire folder called "daughter [Victim A's

24 Mother]" with 41 child pornography images of Victim N.  The

25

26  _____

27      [5] Where the image involves lascivious exhibition of the
    genitalia, as opposed to sexual intercourse, the Ninth Circuit has
    held that this factual determination must be made by the jury, which
28  can consider and weigh eight factors as it sees fit.  *United States*
    *v. Arvin*, 900 F.2d 1385, 1389, 1391 (9th Cir. 1990).

folder/sub-folder structure of defendant's Mega account is relevant to showing defendant's state of mind as she saved child sexual abuse materials in folders called "favorites," "fun," "best," "CP%2fYOung Teens," "girls under 6 sex," and "new love."  She even created a "stuff" folder separated into subfolders by their content of child sexual abuse material, such as "anal," "blowjobs," "boys," "cum," "k9," "mommy and tots," and "penetration."  That defendant maintained a well-organized child pornography collection on Mega is evidence of her intent and knowledge.

Although the United States believes that presentation of larger quantities of images and videos is permissible, here the United States seeks to admit at trial only a tiny fraction of the hundreds of child pornography images and videos that defendant organized in her online accounts.  Additionally, the United States intends to present this evidence in a manner appropriate to its sensitive nature.  This handling of the child sexual abuse material, together with the small percentage that will be shown, ameliorates any theoretical unfair prejudice defendant could claim, especially if defendant waives her right to a jury trial.  *See Ganoe*, 538 F.3d at 1124 (district court properly exercised discretion in admitting 10 out of 72 child pornography images and videos).

### C.   Non-Child Pornography Photographs and Video Recordings

At trial, the government also intends to display non-child pornography photographs and video recordings.  For example, the United States anticipates introducing a video recording and screen shots of text messages between defendant and Victim A's mother.  These text messages are relevant to showing that defendant took custody of Victim A on May 22, 2019 and offered to take custody of

1  Victim A using her iPhone, a means and facility of interstate

2  commerce.  The United States also anticipates showing photographs

3  taken during the search warrant execution at defendant's home.  The

4  photographs depict Victim N's bedroom and a bathroom in the home --

5  locations where the child pornography images of Victim N were taken.

6       The photographs the United States intends to use are admissible

7  as evidence.  *United States v. Stearns*, 550 F.2d 1167, 1171 (9th Cir.

8  1977) (photographs of crime scene admissible).  Photographs should be

9  admitted so long as they fairly and accurately represent the event or

10 object in question.  *United States v. Oaxaca*, 569 F.2d 518, 525 (9th

11 Cir. 1978).

12      Additionally, there is no rigid set of foundational requirements

13 for admitting recordings.  Rather, the Ninth Circuit has held that

14 recordings are sufficiently authenticated under Federal Rule of

15 Evidence 901(a) if sufficient proof has been introduced "so that a

16 reasonable juror could find in favor of authenticity or

17 identification," which can be done by "proving a connection between

18 the evidence and the party against whom the evidence is admitted" and

19 can be done by both direct and circumstantial evidence.  *United*

20 *States v. Matta-Ballesteros*, 71 F.3d 754, 768 (9th Cir. 1995),

21 *modified by* 98 F.3d 1100 (9th Cir. 1996).  For example, testimony

22 that a recording accurately depicts what the witness saw or heard is

23 sufficient to authenticate the recording.  *See United States v.*

24 *Smith*, 591 F.3d 974, 979-80 (8th Cir. 2010).

25      Here, either Victim A's mother and/or Special Agent Ruiz will be

26 able to authenticate each of the non-child pornography photographs

27 and recordings that the United States intends to introduce at trial.

28

1

D.   **Google Map**

2       The United States intends to introduce a Google map showing the

3  highways and freeways between Hemet, California (where Victim A

4  lived) and Yucaipa, California (where defendant lived) to assist the

5  factfinder with understanding anticipated testimony from Victim A's

6  mother concerning the route on which she transported Victim A on May

7  22, 2019.  Maps like this one may be admitted where the witness

8  testifies that the map is an accurate depiction of the geographic

9  location it shows.  *United States v. Alejandro*, 354 Fed. App'x 124,

10  128 (5th Cir. 2009) (district court properly admitted map where

11  detective testified the map accurately depicted the surrounding

12  area).

13       For purposes of showing the general location of the highways and

14  freeways between Hemet, California and Yucaipa, California, the Court

15  may also take judicial notice under Federal Rule of Evidence

16  201(b)(2) of the map given that Google maps is a source whose

17  accuracy cannot reasonably be questioned.  *United States v. Perea-*

18  *Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012).

19       E.   **Records of Regularly Conducted Activity**

20       The United States anticipates offering records of regularly

21  conducted activity obtained from Google and Apple in its case-in-

22  chief.  These records are relevant because they show, among other

23  things:

24  •  The iPhones registered to defendant during the period of

25     October 2018 to November 2019;

26  •  Defendant's iPhones were manufactured in China;

27  •  Defendant's search history includes searches such as, "best

28     child porn pron [sic] with no government motering [sic],"

21

"free real dad daughter porn," "free real brother sister porn," and "free real taboo brother cum in sister;" and

- Between October 2018 and November 2019, defendant downloaded Mega about 122 times, Kik about 100 times, Google Hangouts about 27 times, and Wickr 28 times -- a pattern consistent with defendant's intent to hide her sexual interest in children and to prevent discovery of the charged criminal acts.

These records are the subject of two pending motions *in limine* and should be admitted because they are self-authenticating records under Rules 902(11), 902(13), and 803(6).  (ECF Nos. 40, 53.)

**F.    Reciprocal Discovery**

The United States has requested reciprocal discovery and expert disclosures from the defense.  To date, defense counsel has only provided the United States with subpoena returns received from Kik and Google.  (ECF No. 74.)  To the extent defendant attempts to introduce or use other documents at trial that have not been previously produced, or to use undisclosed experts, the government reserves the right to seek to preclude their use.  *See* Fed. R. Crim. P. 16(d)(2) ("[T]he court may . . . prohibit the party from introducing evidence not disclosed."); *see also Taylor v. Illinois*, 484 U.S. 400, 415 (1988) (defendant's failure to comply with, or object to, government's discovery requests before trial justified exclusion of unproduced evidence).

**G.    Affirmative Defenses**

Defendant has not given notice of an intent to rely on any defense of mental incapacity, duress, entrapment, or alibi.

Therefore, to the extent defendant may attempt to rely on any such defense, the United States reserves the right to object.

### H. Scope of Cross-Examination of Defendant

If defendant testifies at trial, she waives her right against self-incrimination, and the United States will cross examine her on all matters reasonably related to the subject matter of her testimony.  As the Supreme Court stated, "[t]he defendant cannot assert a self-incrimination privilege 'on matters reasonably related to the subject matter of her cross-examination.'"  *Fitzpatrick v. United States*, 178 U.S. 304 (1971).  Rather, the extent of permissible cross examination is determined by whether "the government's questions are reasonably related to the subjects covered by the defendant's testimony."  *United States v. Black*, 767 F.2d 1334, 1341 (9th Cir. 1985) (internal quotation marks and citation omitted); *see also* Fed. R. Evid. 611(b).  Thus, defendant has no right to avoid cross-examination on matters that call into question her claim of innocence.  *United States v. Mehrmanesh*, 682 F.2d 1303, 1310 (9th Cir. 1982); *United States v. Miranda-Uriarte*, 649 F.2d 1345, 1353-54 (9th Cir. 1981).

### I. Character and Impeachment Evidence

Federal Rule of Evidence 405(a) sets forth the sole methods for which character evidence may be introduced.  It specifically states that, where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation and (2) by testimony as to opinion.  Thus, a defendant may not introduce specific instances of her good conduct through the testimony of others.  *See Michelson v. United States*, 335 U.S. 469, 477 (1948).  On cross-examination of a defendant's character witness, however, the

government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue.  See Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past wrongful acts.  *See Michelson*, 335 U.S. at 477.  At this point, defendant has not stated whether or not she intends to call character witnesses.

**VI.   CONCLUSION**

The government respectfully requests leave to file supplemental trial memoranda before or during trial, as may become appropriate.