CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
HOWARD SHNEIDER (Bar No. 309492)
(E-Mail: Howard_shneider@fd.org)
IJEOMA U. EKE (Bar No. 331938)
(E-Mail: Ijeoma_eke@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
STEFANI KASEY MARIE STEVENS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>STEFANI KASEY MARIE STEVENS,<br><br>    Defendant. | Case No. ED CR 19-377-VAP<br><br>**STEFANI KASEY MARIE STEVENS' RESPONSE TO GOVERNMENT SENTENCING POSITION** |

Stefani Kasey Marie Stevens, through counsel, files this response to some of the points raised in the government's sentencing position.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: May 1, 2023         By  /s/ Howard Shneider
                               Howard Shneider
                               Ijeoma U. Eke
                               Deputy Federal Public Defenders
                               Attorneys for Stefani Kasey Marie Stevens

# RESPONSE TO GOVERNMENT SENTENCING POSITION

## I. INTRODUCTION

In its sentencing position, the government repeatedly referred to Ms. Stevens in dehumanizing terms, asked the Court to consider the sentencing recommendation of the victims' parents, claimed that a life sentence is needed without addressing the restrictive nature of sex-offender supervised release conditions, argued for consecutive sentences, and mischaracterized the timeline of the production conduct. Because these are arguments or factual characterizations that Ms. Stevens did not address in her sentencing position, she files this response. In addition, Ms. Stevens attaches as a supplemental exhibit additional certificates for classes she has completed at Santa Ana Jail. *See* Ex. H.

## II. ARGUMENT

**A.  Ms. Stevens objects to being referred to by various epithets, which may lead to an unfair and arbitrary sentence in violation of the Fifth, Eighth, and Fourteenth Amendments, and also violate the dictates of § 3553(a).**

Under the Constitution, even defendants convicted of the most "heinous crimes" have the right to sentencing proceedings conducted with dignity, *Hall v. Florida*, 572 U.S. 701, 708 (2014); *McKaskle v. Wiggins*, 465 U.S. 168, 176-77 (1984), under "civilized standards," *Trop v. Dulles*, 356 U.S. 86, 100 (1958), and in keeping with "fundamental fairness." *Sawyer v. Smith*, 497 U.S. 227, 241 (1990); *Houston v. Estelle*, 569 F.2d 372, 383 (5th Cir. 1978). "The State, even as it punishes, must treat its members with respect for their intrinsic worth as human beings." *Furman v. Georgia*, 408 U.S. 238, 270 (1972) (Brennan, J., concurring). Repeated epithets that refer to irrelevant matters destroy "the dignity due a rational [sentencing] process," in violation of the Fifth and Fourteenth Amendments. *Houston*, 569 F.2d at 383. Such an atmosphere of disparagement also violates the Eighth Amendment's prohibition against arbitrary sentencing. *Furman*, 408 U.S. at 249 (Douglas, J., concurring); *id.* at 273

1

1  (1972) (Brennan, J., concurring) (explaining the "fundamental premise of the [Eighth
2  Amendment] that even the vilest criminal remains a human being possessed of common
3  human dignity"); *Gregg v. Georgia*, 428 U.S. 153, 189 (1976).
4        This baseline requirement of fairness has been held violated by a prosecutor's
5  repeatedly disparaging a defendant as a drug "pusher" or "seller" at a sentencing for
6  drug possession, and remarks by the prosecutor alluding to matters not in evidence.
7  *Houston*, 569 F.2d at 383; *cf. United States v. Whitmore*, 480 F.2d 1154, 1158 (D.C.
8  Cir. 1973) (addressing guilt phase). The root of the constitutional problem is the
9  remarks' tendency to distract the sentencer from factors relevant to the appropriate
10 punishment.
11       These dangers are fully present in the context of victim impact statements, as
12 calls for vengeance can "deflect the [sentencer] from its duty to consider the individual
13 defendant and his moral culpability." *See* Susan Bandes, *Empathy, Narrative, and*
14 *Victim Impact Statements*, 63 U. Chi. L. Rev. 361, 395 (Spring 1996). The Supreme
15 Court has repeatedly recognized these dangers in capital sentencing, noting that victim
16 characterizations of the crime and the defendant "serve no other purpose than to
17 inflame the jury and divert it from deciding the case on the relevant evidence." *Booth v.*
18 *Maryland*, 482 U.S. 496, 508 (1987), *overruled in part on other grounds by Payne v.*
19 *Tennessee*, 501 U.S. 808, 829-30 (1991); *see also Penry v. Lynaugh*, 492 U.S. 302, 316
20 (1989) (citing the requirement of an "individualized sentencing determination" in
21 capital cases). Epithets by prosecutors do the same. *See, e.g., Bennett v. Stirling*, 842
22 F.3d 319, 324-25 (4th Cir. 2016). Diverting the sentencer from the individual
23 defendant's culpability can also improperly encourage the sentencer to impose
24 maximum punishment in an attempt to compensate for victim's losses: a rationale
25 irreconcilable with 18 U.S.C. § 3553's requirement that punishment be no more
26 restrictive than necessary. And rageful sentencings violate the constitutional
27 requirement that judicial proceedings "must not only be fair, they must appear fair to all
28

who observe them." *Indiana v. Edwards*, 554 U.S. 164, 177 (2008) (internal quotations omitted).

For all of these reasons, repeated descriptions of defendants as evil, monstrous, or animalistic have been held to render sentencing trials fundamentally unfair in violation of due process. The Fourth Circuit, for instance, granted habeas relief from a death sentence due to the prosecutor's repeated use of racially-coded epithets—including "monster," "cave man," "vile," "inhuman" and "beast of burden"—that "encourage[d] the jury to fear [the defendant] or regard him as less human on account of his race." *Bennett*, 842 F.3d at 325; *see Cauthern v. Colson*, 736 F.3d 465, 476-77 (6th Cir. 2013) (holding that the prosecutor's references to the defendant as "the evil one" and comparison of the defendant to reviled murderers improperly invoked "a higher [religious] authority"); *Bates v. Bell*, 402 F.3d 635, 648 (6th Cir. 2005) (holding that the prosecutor's description of the defendant as a "rabid dog" suggested that failing to sentence the defendant to death "would be akin to ordering the execution of [his] next victim"); *see also Marshall v. Hendricks*, 307 F.3d 36, 68 (3d Cir. 2002) (prosecutorial misconduct to tell jurors there was a "place in Hell" for defendant); *Furnish v. Comm.*, 267 S.W. 3d 656, 663 (Ky. 2007) (finding "no place in a courtroom for such personal vilification of a defendant [calling him "evil," an "animal," and a "wolf"], no matter how vile the charges against him"); *cf. Darden v. Wainwright*, 477 U.S. 168, 179-81 (1986) (condemning prosecutorial references to defendant as an "animal" and expression of wish to see his face "blown off"). While these concerns are somewhat decreased when the sentencer is a judge rather than jury, they do not disappear, as "judges, no less than jurors, are susceptible to the wide range of human emotions that may be affected by irrelevant and unduly prejudicial materials." *State v. Hess*, 23 A.3d 373, 392 (N.J. 2011).

Here, the government repeatedly refers to Ms. Stevens as a "child sexual predator" and describes her conduct as "evil" and "abhorrent." *See* Gov't Sentencing Position, Dkt. 124, at 1, 2, 17, 18, 23. The government also quotes the victim impact

3

1  statement that Ms. Stevens is "not a mother . . . not a woman . . . not human" and is
2  instead a "monster." *Id.* at 25. The problem with these remarks is not simply that they
3  are pejorative. Rather, they erase from the sentencing calculus § 3553(a)(1)'s critical
4  focus on the defendant's individual "history" and "characteristics" and the
5  circumstances and context of this particular crime. Monsters are not people; by
6  definition, they have no "history" or "characteristics" other than their monstrosity and
7  lack of entitlement to human dignity or compassion. They are categorically different,
8  beyond understanding. But § 3553 requires that sentencers fully consider the
9  circumstances that led to the offense and the characteristics of the person who
10 committed it. That requirement contains no exception for egregious crimes; even in
11 such cases § 3553(a) demands that the sentencer grapple with the complex task of
12 assessing moral culpability in the context of the defendant's lived experience. By
13 arguing that Ms. Stevens' "evil" nature precludes any understanding of her character or
14 acts, the government defies both § 3553(a) and the Fifth, Eighth, and Fourteenth
15 Amendments' prohibition against imposing severe penalties like life imprisonment
16 arbitrarily or contrary to basic human dignity. *Furman*, 408 U.S. at 272-74 (Brennan, J.,
17 concurring). The defense objects to the use of epithets to describe Ms. Stevens, and
18 requests that the Court keep the above principles in mind when conducting the
19 sentencing hearing.

20 **B.     The Court should not base its sentencing decision on the victims'**
21 **        requested sentence.**

22      The Supreme Court in *Booth v. Maryland*, 482 U.S. 496 (1987), "held that the
23 admission of a victim's family members' characterizations and opinions about the
24 crime, the defendant, *and the appropriate sentence* violates the Eighth Amendment[.]"
25 *Bosse v. Oklahoma*, 580 U.S. 1, 2 (2016) (internal quotations and citation omitted)
26 (emphasis added). The Supreme Court rejected such victim opinions as "serv[ing] no
27 other purpose than to inflame the [sentencing phase] jury and divert it from deciding
28 the case on the relevant evidence concerning the crime and the defendant," and as

improperly telling the sentencer "what conclusions [it] should draw from the evidence." *Booth*, 482 U.S. at 508. Although the Supreme Court later partially overruled *Booth* to permit victim impact statements that purely describe the impact of the crime on the victims, *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), it reiterated that victim opinions of the defendant, crime, and proper sentence remain impermissible. *Bosse*, 580 U.S. at 2.

Though *Booth* and *Bosse* arose in the capital context, *Booth*'s central holding that victim opinions regarding the appropriate sentence are irrelevant and serve no proper purpose at sentencing applies with equal force in the noncapital context here. This is especially so where the government and probation office are both recommending a life sentence, which in the federal system is a true life sentence without the possibility of parole.

Aside from constitutional concerns, as a matter of statutory construction the victims' "right to be reasonably heard . . . at sentencing" under the Crime Victims' Rights Act (CVRA) does not extend to sentencing recommendations. *See* 18 U.S.C. § 3771(a)(4). While certain rights have been accorded victims in the CVRA, including the "right to be reasonably heard" at sentencing, victims are not parties to the sentencing proceeding and do not litigate sentences or make specific sentencing recommendations. *See United States v. Hunter*, 548 F.3d 1308, 1311-12 (10th Cir. 2008) (victim has no right to appeal a defendant's sentence because a victim is not a party); *In re Brock*, 262 F. App'x 510 (4th Cir. 2008) (unpublished) (victim has no right to present argument regarding, or to appeal, guideline calculations); *In re Kenna*, 453 F.3d 1136 (9th Cir. 2006) (affirming district court's rejection of victim's claimed right to litigate guidelines as basis for disclosure of PSR); *Kenna v. District Ct.*, 435 F.3d 1011, 1014 & n.2 (9th Cir. 2006) (stating that the right to be "reasonably heard" is similar to a "right of allocution," not a right to present evidence and legal argument); *United States v. Hughes*, 283 F. App'x 345, 354 n.7 (6th Cir. 2008) (unpublished)

1  (questioning "why the particular desires of this victim [bank] should affect the legal
2  analysis necessary for sentencing Hughes").
3     With the above constitutional and statutory principles in mind, the Court should
4  disregard the government's claim that a life sentence is consistent with "requests by the
5  victims' parents." Dkt. 124 at 2. A victim's requested sentence for Ms. Stevens is
6  beyond the scope of what the Constitution and the CVRA allow the Court to consider.

7  **C.     The government's argument for a life sentence fails to account for the**
8  **          multitude of stringent conditions Ms. Stevens will be under if permitted**
9  **          to reenter the community on supervised release decades from now.**

10    The government's argument for a life sentence fails to consider the many strict
11 conditions Ms. Stevens would be subject to as part of sex-offender supervision. The
12 defense did not address the appropriate length of supervised release in Ms. Stevens'
13 sentencing position. But under the circumstances here, Ms. Stevens concedes that a
14 lifetime term of supervised release is appropriate. Such a term of supervised release
15 would include many restrictive conditions that would help ensure the safety of the
16 community.
17    As laid out in the probation office's recommendation letter, Ms. Stevens would
18 not be permitted to live within direct view of school yards, parks, and other prohibited
19 locations, and also would be prohibited from loitering within 100 feet of similarly
20 prohibited locations. Dkt. 116 (conditions 12, 20). Other conditions would prohibit her
21 from associating with minors or being affiliated with a business or organization that
22 would cause her to regularly come in contact with minors, and require any employment
23 to be approved by the probation office. *Id.* (conditions 13, 19). She also would not be
24 allowed to possess any materials depicting or describing child pornography or other
25 sexually explicit conduct involving minors. *Id.* (condition 18). She would have to
26 register as a sex offender, participate in psychological treatment, and submit her person
27 and property to a search, at any time, with or without a warrant. *Id.* (conditions 7, 8,
28 21). In addition to these sex-offender conditions, other conditions allow Ms. Stevens to

6

use only computers disclosed to the probation office, make any such computers subject to search and seizure, and require her to comply with the probation office's computer monitoring program. *Id.* (conditions 21-24). These extensive and exacting conditions will help ensure that Ms. Stevens follows the law and does not reoffend.

### D. The Court should decline to impose consecutive sentences on any counts.

The government requests that the Court impose consecutive sentences on Counts 2 and 6. Ms. Stevens objects to the government's request. Guideline § 5G1.2(d) explains: "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law." The government failed to articulate a reason to deviate from the guidelines' scheme in this case.

The only case cited by the government, *United States v. Cain*, 806 F. App'x 505 (9th Cir. 2020) (unpublished), deals with an entirely different situation involving meth and firearm charges. *Cain* does not even mention § 5G1.2. And, perhaps most importantly, *Cain* isn't precedent and is therefore not persuasive. *See* 9th Cir. R. 36-3(a). "Precedential opinions are meant to govern not merely the cases for which they are written, but future cases as well." *Hart v. Massanari*, 266 F.3d 1155, 1176 (9th Cir. 2001). In contrast, an unpublished memorandum decision—akin to "a letter from the court to parties familiar with the facts, announcing the result and the essential rationale of the court's decision"—"is not written in a way that will be fully intelligible to those unfamiliar with the case, and the rule of law is not announced in a way that makes it suitable for governing future cases." *Id.* at 1178.

//

//

Considering the dictates of USSG § 5G1.2(d) and the unpersuasive nature of the one case cited by the government, the Court should decline to impose consecutive sentences here.

E.  **The government mischaracterizes the timeline of the offense conduct.**

The government's sentencing position makes it seem as if Ms. Stevens was producing pornographic images of Victim N from July 2018 to May 2019. *See* Dkt. 124 at 7-8. But that is not accurate. While there were a limited set of nude photos of Victim N, the only pornographic images of Vitim N were produced in the narrow time range detailed in the indictment, from October 31, 2018 to November 13, 2018. *See* First Superseding Indictment, Dkt. 70, Counts 2-5. Accordingly, the government's timeline mischaracterizes the offense conduct. Ms. Stevens also objects to the PSR's characterization that "[b]y July 13, 2018 . . . Stevens began producing her own child pornography images of Victim 2." PSR ¶ 8. Although evidence shows there were nude photos of Victim N in July, the first pornographic images were not produced until October 31, 2018.

### III. CONCLUSION

The above responses to the government's sentencing position further support Ms. Stevens' request for a 30-year sentence. For the reasons articulated in the defense sentencing position, and the arguments above, Ms. Stevens requests that the Court impose the mandatory-minimum custodial sentence of 30 years followed by a lifetime term of supervised release.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: May 1, 2023

By */s/ Howard Shneider*
Howard Shneider
Ijeoma U. Eke
Deputy Federal Public Defenders
Attorneys for Stefani Kasey Marie Stevens